**In re Wayne John DICKERSON and Merdis Lavonda Dickerson, Debtors.**

**Bankruptcy No. 95–3447–BKC–3P7.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 21, 1996.

David J. Pinkston of Pinkston & Cohen, Jacksonville, Florida, for Debtors.

Elena L. Escamilla, Orlando, Florida, for U.S. Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court upon the United States Trustee's Motion to Dismiss pursuant to 11 U.S.C. § 707(b). Upon consideration of the evidence presented at the hearing held on December 7, 1995, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Wayne John Dickerson and Merdis Lavonda Dickerson ("Debtors") sought protection under Chapter 7 of the Bankruptcy Code due to Mrs. Dickerson's medical problems and the Debtors resulting inability to pay their debts. (Tr. at 4, 23–25). Mrs. Dickerson's medical problems began in 1990 while she was pregnant with her daughter. (Tr. at 20). During the first trimester of her pregnancy, she was diagnosed with severe endometriosis and underwent major abdominal surgery for an ovarian mass. (Id.; Debtors' Ex. 1). This surgery was followed by a Cesarean section three months later, in June 1990. (Id.).

2. Mrs. Dickerson has undergone multiple surgeries every year since 1990, with the last surgery being performed March 1995. (Tr. at 4, 17–18). Since 1990, Mrs. Dickerson has had a total abdominal hysterectomy with removal of both ovaries, reconstructive surgery, and as late as March 1995, a laparosco-py for appendicitis and dissection of scar tissue. (Id.; Debtors' Ex. 1).

3. Because of the March 1995 surgery she was out of work for six to eight weeks. (Record at 18). During her absence she received disability insurance payments of $200.00 per week. (Tr. at 19).

4. Before the March 1995 surgery, Mrs. Dickerson was employed with United Negro College Fund (UNCF) and grossed about $33,000.00 per year. (Tr. at 18). Mrs. Dickerson, with her doctor's advice, resigned from her job with UNCF and accepted part-time employment with the Duval County School Board. (Tr. at 19–20, 35). Her resignation was prompted by the fact that her job with UNCF was strenuous because it required her to travel and work over fifty (50) hours per week. (Tr. at 20).

5. Mrs. Dickerson currently earns a gross salary of $13,651.13 per year with the Duval County School Board. (Tr. at 19, 35). Mr. Dickerson is a Postal Clerk with the United States Post Office at a gross annual salary of approximately $38,000.00. (Tr. at 4).

6. On July 21, 1995 Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. (Record at 1).

7. On October 24, 1995, the United States Trustee ("Trustee") moved for dismissal of debtors' bankruptcy case pursuant to 11 U.S.C. § 707(b), alleging that debtors have primarily consumer debts under 11 U.S.C. § 101(8), and debtors' relief would be a substantial abuse of provisions of Chapter 7. (Record at 15).

8. Mrs. Dickerson states that the schedules originally filed with the Chapter 7 petition do not truly reflect their current financial situation because Mrs. Dickerson's salary is now less than what is listed on the schedules. (Tr. at 23). After the 341 Meeting, the Debtors also filed an addendum to their schedule "J" showing an increased monthly expenditure to $3,876.12. (Tr. at 36; Debtors' Ex. 4).

9. Currently, Mr. Dickerson's biweekly net income is approximately $859.98, and his gross biweekly income is approximately

$1,428.69.[1] (Trustee's Ex. 7; Tr. 9). Mrs. Dickerson biweekly net income is $485.39 and gross biweekly income is $525.50. (Debtors' Ex. 5; Tr. at 24, 35). Debtors therefore have a combined monthly net income of approximately $2,690.74 and a combined monthly gross income of $3,908.38. (Tr. 9, 24, 35). There are three persons in Debtors' household. (Tr. at 33).

10. Debtors' claims as listed on their schedules are summarized as follows:

| SECURED CLAIMS | AMOUNT OF THE CLAIM |
|---|---|
| Car Loan | $10,600.00 |
| Loan secured by household goods | $5,000.00 |
| First mortgage on Debtors' Home [2] | $68,000.00 |
| **TOTAL** | **$83,600.00** |

| UNSECURED PRIORITY CLAIMS | |
|---|---|
| Internal Revenue Service | $1,260.00 |

| UNSECURED NON-PRIORITY CLAIMS | |
|---|---|
| Credit Card Bills | $15,256.45 |
| Medical Bills | $459.15 |
| Student Loans | $10,172.20 |
| Personal Loans | $12,507.18 |
| Books | $36.90 |
| Services | $286.33 |
| **TOTAL** | **$38,718.21** |

(Record at 1).

11. Trustee's argument is twofold. First, Trustee contends that the Dickersons' debts are "primarily consumer" debts pursuant to 11 U.S.C. § 101(8). (Record at 15). Secondly, Trustee argues that granting relief would be substantial abuse of the provision of Chapter 7. (*Id.*).

12. At trial, Trustee questioned Debtors regarding whether the following monthly expenses were excessive and could be reduced or excluded from their monthly budget:

| | | |
|---|---|---|
| $ | 450.00 | for food |
| $ | 150.00 | for recreation |
| $ | 20.00 | for charitable contribution |
| $ | 150.00 | for unexpected personal expenses |
| $ | 125.00 | for anticipated auto repairs |
| $ | 150.00 | for telephone charges |
| $ | 96.00 | for AAA one-year Membership |
| $ | 125.00 | for Leadership Jacksonville Tuition [3] |
| **$ 1,266.00** | | **TOTAL** |

(Tr. at 36–41).

1. Movant provided four copies of Mr. Dickerson's statement of pay with varied amounts, and these amounts were averaged. (Trustee's Ex. 7).

2. Debtors surrendered their home because they could not afford to maintain it. (Tr. at 32). The United States Trustee admits that this is a no asset case. (Tr. at 33).

13. Mr. Dickerson explained that his payments of $125.00 to the Thrift Savings Plan is a retirement investment. (Tr. at 9–10). The $150 monthly for recreation is used for movies, birthdays and other special occasions. (Tr. 40). There is a $20 monthly charitable contribution to United Way. (Tr. at 11). The $150 monthly for unexpected personal expenses is used for unexpected items that may arise, such as parking tickets. (Tr. at 38). The $125 monthly for auto repair is because debtors have a 1993 Nissan Altima and a 1988 Nissan Maxima. (*Id.*). The $150 monthly telephones charges estimate is because both debtors have family out of the state of Florida. (Tr. 40).

14. Trustee also inquired into the Debtors' need to pay for separate health insurance coverage for Mrs. Dickerson. (Tr. 11–12). Mr. Dickerson testified that the extra insurance is needed because the health insurance coverage provided through his employer is not comprehensive, and debtors do not have the extra money to pay for the wife's health care. (*Id.*).

15. This Court finds that the monthly expenses that the Trustee questioned as being excessive are not immoderate, except the Debtors' monthly expense of $150.00 for unexpected personal expenses.

### CONCLUSIONS OF LAW

■■■■ The issue before the Court is whether Debtors' case warrants dismissal under 11 U.S.C. § 707(b), which states:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the re-

3. The "Leadership Jacksonville Tuition" is a one time payment of $1,500.00 divided by twelve months, with the last payment in September 1995. (Tr. at 39).

quest or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be substantial abuse of the provision of this Chapter. There shall be a presumption in favor of granting relief requested by the debtor.

11 U.S.C. § 707(b). Generally, in evaluating a motion to dismiss under § 707(b), the threshold determination is whether debts are "primarily consumer debts." 4 Collier on Bankruptcy, ¶ 707.04 (1994). However, the case is not dismissed solely because the debts are primarily consumer debts. *Id.* The court must then determine whether granting debtors' relief would be a substantial abuse of the provision of Chapter 7. *Id.* Trustee has the burden of proving that the Chapter 7 filing should be dismissed as a "substantial abuse" under section 707(b). Hon. Barry Russell, Bankruptcy Evidence Manual, § 301.7 (1995–96 ed.). This Court will deal with each issue in turn.

### A. Consumer Debts

First, is whether the Dickersons' debts are primarily consumer debts. "Consumer debt" is a debt "incurred by an individual primarily for a personal, family or household purpose." 11 U.S.C. § 101(8). The leading case interpreting the term "consumer debt" comes from the Ninth Circuit Court of Appeals. *See Zolg v. Kelly, III (In re Kelly),* 841 F.2d 908 (9th Cir.1988). The central issue in *Kelly* was whether a debt secured by an interest in real property is a consumer debt. *Id.* at 912. Looking at the plain meaning of the statute, the *Kelly* court concluded that Congress intended that "consumer debt" includes secured debts and debts secured by interest in real property. *Id.* The Court of Appeals explained that section 524 of the Code explicitly recognizes that consumer debt may be secured by interest in real property.[4]

The *Kelly* court reasoned that courts should examine the "purpose" of the debt to determine whether it is consumer debt. *Id.*

at 913. *Kelly* also instructs that the term "primarily" means "for the most part." *Id.* Therefore, when more than half the debts are for the purpose of family, personal or household, it is consumer debt. *Id.*

One Middle District of Florida court has adopted the basic rationale of *Kelly. See In re Gentri,* 185 B.R. 368, 372 (Bankr.M.D.Fla. 1995) (Glenn, J.). In *Gentri,* the court ruled that the debts secured by debtors' real property are "consumer debts." *Id.* The court applied the definition of "consumer debt" mechanically to determine the threshold issue of whether debtors have primarily consumer debts. *Id.*

Both *Kelly* and *Gentri* follow the majority trend, holding that debts secured by real property is "consumer debt."[5] The minority trend follows legislative history that dictates that "a consumer debt does not include a debt secured by real property." *See* 2 Colliers on Bankruptcy, ¶ 101.08 (15th ed. 1995). This Court adopts the majority view point espoused in *Kelly.*

Based on the evidence and testimony presented at trial, the Court categorizes the debts as follows:

#### Consumer Debts

| | | |
|---|---|---|
| (1) | Car Loan | $10,600.00 |
| (2) | First mortgage on Home | $68,000.00 |
| (3) | Books | $36.90 |
| (4) | Credit Card Bills | $15,256.45 |
| | **TOTAL** | **$93,893.35** |

#### Non–Consumer Debts

| | | |
|---|---|---|
| (1) | Medical Bills | $459.15 |
| (2) | Student Loans | $10,172.20 |
| (3) | Internal Revenue Service Debt | $1,260.00 |
| | **TOTAL** | **$11,891.35** |

#### Unexplained Debts

| | | |
|---|---|---|
| (1) | Loan Secured by household goods | $5,000.00 |
| (2) | Personal Loans | $12,507.18 |
| (3) | Services | $286.33 |
| | **TOTAL** | **$17,793.51** |

(Record at 1).

The Court concludes that the debts here are primarily consumer debts within the meaning of section 101(8). Over $93,000.00 is for family, personal and household purpose. Moreover, even adding the category of

---

4. *Id.* (citing 11 U.S.C. §§ 524(c)(6)(B), (d)(2)).

5. The properties involved in the both *Kelly* and *Gentri* were debtors' residence.

"unexplained debts" with the category of "non-consumer debts" would equal $29,-684.86, leaving the primary amount of debts as "consumer debts." Thus, the first prerequisite to dismissal under section 707(b) is satisfied.

### B. Substantial Abuse

■■■ Having decided that debtors have primarily consumer debts, the Court now turns to the second prerequisite to dismissal under § 707(b), evaluating whether granting debtors' relief would be a "substantial abuse" of Chapter 7. Courts have employed two approaches in evaluating "substantial abuse."

The majority approach comes from the Eighth and Ninth Circuit Courts of Appeals. *See Kelly*, 841 F.2d at 913–15; *U.S. Trustee v. Harris*, 960 F.2d 74 (8th Cir.1992); *Fonder v. U.S.*, 974 F.2d 996 (8th Cir.1992). These courts look at "debtor's ability to repay the debts for which a discharge is sought." *Id.* In *Fonder*, the Eighth Circuit Court of Appeals states the proper test is: "[W]hether the debtor's ability to repay creditors with future income is sufficient to make the Chapter 7 liquidation of bankruptcy a substantial abuse of the Code." *Fonder*, 974 F.2d at 999. The rationale for this test comes from the congressional record which states the purpose of dismissal for substantial abuse is to " 'uphold [the] creditors' interests in obtaining repayment where such repayment would not be a burden,' and that 'if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent substantial abuse.' " *Kelly*, 841 F.2d at 914.

The minority approach is outlined in the Fourth Circuit Court of Appeals case of *Green v. Staples (In re Green)*, 934 F.2d 568 (4th Cir.1991). In *Green*, the Court of Appeals rejected the majority view and adopted a "totality of the circumstances" test, which involves an evaluation of the following factors:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(5) Whether debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(4) Whether the petition was filed in good faith.

*Id.* (citing *In re Strong*, 84 B.R. 541, 545 (Bankr.N.D.Ind.1988)). The rationale employed in *Green* is that the "totality of circumstances" approach is similar to Congressional thinking surrounding the adoption of section 707(b) and is "consistent with the statutory presumption in favor of granting relief requested of debtors." *Id.* at 572. Moreover, "no where in the Code is there a requirement that a debtor be insolvent in order to file for bankruptcy." *Id.* This minority approach was also adopted in two Middle District of Florida cases. *See In re Tindall*, 184 B.R. 842 (Bankr.M.D.Fla.1994) (Glenn, J.) and *In re Gentri*, 185 B.R. at 372–75 (Glenn, J.). Both Debtors and Trustee argued and applied the minority approach in *Green* and trial, but neither side briefed the *Green* factors.[6]

---

**6.** Although this Court declines to adopt the "totality of circumstances" test in *Green*, the facts in this case do not point to "substantial abuse" under the totality of circumstances. Debtors filed this bankruptcy because of Mrs. Dickerson's surgery in March 1995 which prevented her from working full-time and lowered the couple's net income.

Trustee failed to show that Debtors made credit card purchases or incurred cash advances far in excess of their ability to pay. Debtors' proposed family budget is neither excessive nor unreasonable.

From testimony presented, Debtors' schedules and statement of current income originally filed do not reflect Debtors' true financial condition, and consequently, they amended their schedules to include an addendum to schedule "J" reflecting a increase in monthly expenditures. Also, there was a significant decrease in Mrs. Dickerson's salary because she is now working part-time at the recommendation of her doctor.

Finally, Trustee presented no evidence of bad faith filing, except to state that debtors are capable of paying their bills as they come due. In sum, the facts do not point to "substantial abuse" under minority approach.

This Court adopts the majority approach test of whether debtors' abilities repay creditors with future income is sufficient to make the Chapter 7 liquidating bankruptcy a substantial abuse of the Code. *See Kelly,* 841 F.2d at 913–15; *Harris,* 960 F.2d at 77–78; *Fonder,* 974 F.2d at 999.

In the case, there is no substantial abuse of Chapter 7 because Debtors do not have the ability to repay their creditors with their future income. As stated earlier, the Court does not find, as Trustee suggests, that Debtors' monthly budget is excessive. During the trial the Trustee inquired into whether Mr. Dickerson expected a pay increase January 1996. (Tr. 8). Mr. Dickerson testified he expects a $400.00 pay increase in January 1996. (*Id.*). No other evidence was offered as certainty of the amount and precise date of the increase. The Court cannot speculate as to whether he actually received an increase and the exact amount of the increase. Moreover, assuming that Mr. Dickerson actually received an increase in pay and that certain expenses are deleted from Debtors' monthly budget, Debtors the ability to pay their creditors with their future income would not be affected.[7] Thus, Trustee has not met its burden of showing "substantial abuse" for dismissal of Debtors' Chapter 7 case.

### CONCLUSION

Although the Court finds that the Debtors have primarily consumer debts, the United States Trustee has failed to convince the Court that Debtors' relief would be a substantial abuse of the provisions of Chapter 7 of the Bankruptcy Code. The Court therefore denies Trustee's motion to dismiss pursuant to section 707(b).

In accordance with these findings of fact and conclusions of law, the Court will enter a separate order denying United States Trustee's Motion to Dismiss Debtors' Chapter 7 case pursuant to 11 U.S.C. § 707(b).

### *ORDER DENYING UNITED STATES TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO 11 U.S.C. § 707(b)*

This case came before the Court upon United States Trustee's Motion to Dismiss pursuant to 11 U.S.C. § 707(b). Upon Findings of Fact and Conclusions of Law separately entered, it is

### ORDERED:

United States Motion to Dismiss pursuant to 11 U.S.C. § 707(b) is denied.

---

7. For example:

| | |
|---|---:|
| Monthly Expenditures | $3,876.00 |
| Unexpected Expenses | – $150.00 |
| Leadership Jacksonville | – $125.00 |
| AAA Yearly Membership | – $96.00 |
| **Adjusted Monthly Expenses** | **= $3,505.00** |
| Combined Net Income (Tr. at 9, 24, 35) | – $2,690.74 |
| Possible Pay Increase | – $400.00 |
| **TOTAL MONTHLY DEFICIT** | **($414.26)** |