**In re Edward Dean COX, Debtor.**

**No. 99–00643.**

United States Bankruptcy Court,
N.D. Florida,
Gainesville Division.

May 16, 2000.

Herbert W. Webb, Gainesville, FL, for Debtor.

Karen Specie, Gainesville, FL, trustee.

### ORDER GRANTING MOTION TO DISMISS

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER is before the Court upon the United States Trustee's Motion to Dismiss the case pursuant to 11 U.S.C. § 707(b), filed on March 7, 2000. Having considered the evidence and arguments presented by both counsel, having reviewed the pleadings and related documents submitted in the cause, and based on additional research, I find that affording the Debtor Chapter 7 relief would be a substantial abuse of the provisions of Chapter 7 of the Bankruptcy Code, and the case will be dismissed.

### Facts

This case was filed on December 23, 1999 as a Chapter 7. The Debtor, a single man with no dependants, works as a District Sales Manager for Pepperidge Farm. In his schedule of assets, the Debtor lists personal property worth $10,730. He does not own real estate and his primary assets are a 1996 Ford Taurus automobile valued at $7000.00 (secured by a lien of $6400.00), and a 1995 Sea Nymph boat (valued at $3000 secured by a lien of $1400.00). On February 29, 2000, the Debtor entered into a post-petition reaffirmation agreement on these debts. Additionally, since filing for bankruptcy, the Debtor has begun to make contributions toward a 401(k) plan.

At hearing, the Debtor testified that his financial straits did not come about due to a catastrophic event such as the onset of a medical condition or loss of job. Instead, over the past ten years, he has accrued substantial credit card debt with not much to show for it. Essentially, these companies would send him credit cards, and he

would use them. As a result, the Debtor owes $108,792.00 to unsecured creditors with non-priority claims, mostly for consumer purchases.

The schedules reflect $2747.09 in monthly net income and $2416.00 in monthly expenditures. The Debtor describes his expenses in Schedule J [1]:

| rent (including lot for mobile home) | $600 |
|---|---|
| utilities (electric, telephone, and cable) | 300 |
| food | 560 |
| clothing | 80 |
| laundry/dry clean | 50 |
| medical/dental | 50 |
| transportation (not including car payments) | 100 |
| recreation | 50 |
| insurance (health & auto) | 65 |
| insurance (boat) | 15 |
| taxes | 8 |
| car payments | 189 |
| boat payments | 149 |
| grooming | 20 |
| vehicle maintenance | 30 |
| meals outside home | 150 |

Based on the Debtor's calculations, the difference between his monthly income and expenses is $331.09 in disposable income. The United States Trustee filed the instant motion, arguing that granting the Debtor Chapter 7 relief would be an abuse of the provisions of the Bankruptcy Code.

## Discussion

■ Under § 707(b),

After notice and a hearing, the court ... on a motion by the United States Trustee ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b). *See In re Mills,* 246 B.R. 395, 400 (Bankr.S.D.Cal.2000). The

1. In a deposition April 6, 2000, the Debtor stated that he will amend his Schedule J to increase his medical/dental expenses to $88, include a $100 expense for his mother, $25 for pet grooming, and also including money for chiropractic work and his 401(k) program. The Debtor stated that he is deleting the expense for meals outside the home.

2. At one time, the "ability to pay" approach was the majority approach. However, the

Trustee has the burden to prove that the Chapter 7 filing should be dismissed under this Code section. In the present case, the Debtor admits that his debt is primarily consumer debt. Thus, the Trustee must prove that granting the Debtor's discharge would be a substantial abuse of Chapter 7.

There are two basic approaches used by courts to determine what constitutes "substantial abuse." The first approach looks to the debtor's ability to repay his debts out of future income, as determined by his ability to fund a Chapter 13 plan. *See In re Rushing,* 93 B.R. 750, 752 (Bankr. N.D.Fla.1988); *In re Dickerson,* 193 B.R. 67, 71 (Bankr.M.D.Fla.1996) (citing cases from the Eight and Ninth Circuit Courts of Appeals). The second adopts a "totality of the circumstances" test which evaluates a list of numerous factors which are relevant to the debtor's financial planning and could be evidence of substantial abuse.[2] *See In re Haddad,* 246 B.R. 27, 33 (Bankr. S.D.N.Y.2000) (listing fifteen illustrative factors). Presently, there are no controlling cases in the Eleventh Circuit. Regardless of which approach is appropriate, the common thread among the circuits is that if the debtor has the ability to repay even a portion of his debts out of future income, he should not be in Chapter 7. *See Lamanna,* 153 F.3d at 4.

To guide courts in making this determination, many circumstances can be considered. In the present case, several of the factors laid out in *Haddad* are pertinent to the Debtor's case:

1) whether the petition was filed because of a sudden illness, calamity, disability, or unemployment

Tenth Circuit has adopted the "totality of the circumstances" approach. *In re Stewart,* 175 F.3d 796 (10th Cir.1999). Additionally, the First, Second, and Sixth Circuits adopt a hybrid of both approaches and weigh the ability to repay as just one of many factors. *See In re Krohn,* 886 F.2d 123 (6th Cir.1989); *In re Kornfield,* 164 F.3d 778 (2nd Cir.1999); *In re Lamanna,* 153 F.3d 1, 4–5 (1st Cir.1998).

2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay;

3) whether the debtor is eligible to adjustment of his debts through chapter 13;

4) whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities;

5) whether there is no other choice available to the debtor for working out his financial problems other than Chapter 7, and whether the debtor has explored or attempted other alternatives.

*See Haddad,* 246 B.R. at 33. Here, the Debtor currently has over $300 in monthly disposable income. Had he filed a Chapter 13 case, more than $10,800 would be available over the life of a 36 month plan for payment to creditors; over $18,000 would be available for creditors over 60 months. Without any change in lifestyle, 16% of the Debtor's unsecured debt could be paid off in a Chapter 13 plan. Of course, the essence of a § 707(b) action is that the Debtor should, if possible, reduce his expenses and curb his lifestyle in order to pay down his debt. Here, certain expenses are either unnecessary or excessive, which is money that should be put towards a Chapter 13 plan.

Currently, the Debtor spends $560 per month for food, even though he has no legal dependants. The Debtor testified that in addition to himself, he frequently feeds his fiance, her children, and their boyfriends. His fiance does not contribute to the purchase of food; she works as a cashier and makes about $8,000 per year. The food budget does not stop there, nevertheless, as he lists an additional $150 for meals outside the home.

■ Since the Debtor intends to remove the $150 meal expense from his schedules, that money can immediately be included as part of his disposable income. Additionally, it is unreasonable for the Debtor to be feeding his non-legal dependents such as his fiance and her family instead of paying his creditors. Thus, his non-work food budget of $560 must be reduced. The Debtor could easily budget meals at $350 per month, adding $210 more to his disposable income.

■ The Debtor began making contributions to a 401(k) retirement savings plan after he filed the instant Chapter 7 matter. The payroll deduction is $59.80 per pay period, or $119.60 per month. "There is an overwhelming consensus among bankruptcy courts that a debtor's voluntary payment into a pension, savings, or investment-type plan, such as a 401(k) plan, is not an expenditure reasonably necessary for a debtor's maintenance and support during the pendency of a Chapter 13 plan." *Heffernan,* 242 B.R. at 818 (citing *In re Johnson,* 241 B.R. 394 (Bankr.E.D.Tex. 1999)); *but see Mills,* 246 B.R. at 401 (allowing a modest contribution to a 401(k) plan where the debtor is near the age of retirement and has no other retirement savings plan). Additionally, two bankruptcy cases prohibit 401(k) expenses in the context of a § 707(b) dismissal. *See In re Heffernan,* 242 B.R. 812, 818 (Bankr. D.Conn.1999); *In re Watkins,* 216 B.R. 394, 396 (Bankr.W.D.Tex.1997). In the present case, the Debtor is not near the age of retirement and only started his 401(k) plan after bankruptcy when he had some available cash. Based upon the consensus of cases, these 401(k) contributions are not necessary expenses. Thus, $119.60 must be included in his disposable income.

■ The Debtor testified that he intends to give $100 to his mother every month. At hearing, he explained that she has no money for food and lives in low-income housing. Although it is admirable that the Debtor would want to take care of his mother, she is not a dependent. "[T]he moral obligation to a family member who is not a dependant does not take priority over the legal obligation to repay a creditor." *Haddad,* 246 B.R. at 37. Since the Debtor's creditors take precedence over his mother with regard to the $100, that

money should be added to the disposable income calculation.

▮ Finally, the Debtor pays $164 per month to keep his boat. When the Debtor entered the post-petition reaffirmation of the boat and car loans, the net effect was also to cross collateralize certain outstanding debt which the Debtor previously believed to be unsecured. The reaffirmed boat loan is now payable at $149.00 per month, and certain debt which may have been unsecured now enjoys a secured status. The Debtor also pays $15 per month for insurance on the boat, he uses the boat for recreational purposes, which is specifically the type of non-essential spending that Congress intended to combat in drafting § 707(b). More disturbingly, since the Debtor's credit card debt is ten years old, he purchased the boat at a time when he clearly could not afford it. In a Chapter 13, the Debtor could still keep his car, and his unsecured debt would be administered as part of his plan. Thus, this boat expense is disallowed, and $164 is added to the disposable income estimate.

Even though the Debtor's lifestyle is not necessarily extravagant, he has shown that his debts came about due to ill-advised non-business credit card spending. When confronted with mounting bills, instead of altering his spending habits, the Debtor filed for Chapter 7 bankruptcy. This makes him a poster child for Congress' reform action to curb abuses of the Bankruptcy Code. By eliminating certain expenses not reasonably necessary for support and maintenance, the Debtor would have $1,074.69 in disposable income. He may not be able to fully repay his unsecured creditors, but he would be able to make substantial payments on these claims. Under a 36 month plan, total payments to the creditors could total $38,-688.84, or 36% of his unsecured claims. Under a 60 month plan, those payments could total $64,481.40, or 59% of his unsecured claims. Since there is no evidence which would weigh in favor of granting the Debtor a Chapter 7 discharge, it is

ORDERED and ADJUDGED that the Trustee's motion is granted and this case will be dismissed if the Debtor does not voluntarily convert this case to a Chapter 13 proceeding within fifteen days of the date of this Order.