In re Thomas L. **DORWARTH**, Debtor.

No. 00–18724–BKC–AJC.

United States Bankruptcy Court,
S.D. Florida.

Jan. 31, 2001.

Rex E. Russo, Coral Gables, FL, for Thomas L. Dorwarth.

Denyse Heffner, Miami, FL, Assistant United States Trustee.

Robert C. Furr, Boca Raton, FL, trustee.

## ORDER DISMISSING CASE

A. JAY CRISTOL, Bankruptcy Judge.

**THIS CAUSE** came before the Court for hearing on January 18, 2001 upon the *United States Trustee's Motion To Dismiss Chapter 7 Case Pursuant To 11 U.S.C. § 707(b)* filed December 11, 2001. The Court having reviewed the record, including Debtor's schedules and statements, having considered the motion, and having heard the proffers, representations and argument of counsel, as well as the testimony of the Debtor, finds that the granting of relief in this case would be a substantial abuse of the provisions of Chapter 7 of the Bankruptcy Code.

The Debtor is a sergeant with the Miami–Dade County Police Department and has earned approximately $60,000.00 annually for the last three years of service. He is to be commended for his many years of dedicated service to the public doing a job that is often not adequately appreciated and for his kind heart in regard to the two old horses for which he now provides care.

Debtor's schedules indicate the Debtor has $311,052.00 in assets and only $66,009.87 in liabilities. Debtor's assets include $279,062.00 of deferred compensation in a retirement account (in which Debtor's former spouse has a 50% interest on the first eight years of deposits) and certain other personal property, such as $75.00 in clothing and accessories, $140.00 in savings and two horses of no monetary value. Of the $66,009.87 in liabilities, $35,009.87 represents debts owed by the Debtor on six credit card accounts. The other $31,000.00 in liabilities represents a lien on the Debtor's 2000 Ford F250 truck. The U.S. Trustee made a point of this vehicle being a top of the line luxury item.

The United States Trustee asserts the Debtor has an ability to pay a large portion of his debts, and allowing him to discharge these claims would be an abuse of Chapter 7 of the Bankruptcy Code. The United States Trustee pointed out to the Court that the two horses which Debtor owns may have no value, but the Debtor provides food, stables and maintenance for the horses at a cost of $1,000.00 per month. The United States Trustee also pointed out that the Debtor is driving a new edition of an expensive version of Ford trucks, the F250; and, although the Debtor claims to have only $75.00 in clothing and accessories, the Debtor's schedule of expenses indicates that he spends $60.00 per month on his clothing.

Section (b) of 11 U.S.C. § 707 states, in pertinent part:

> After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor....

The Trustee has the burden of proving the Chapter 7 filing should be dismissed as an

abuse of this Chapter under the Bankruptcy Code. It is undisputed that Debtor's debts are consumer debts. The issue thus remaining is whether the granting of a discharge to the Debtor is a "substantial abuse" of Chapter 7.

■ Courts have used two different approaches to determine what circumstances constitute "substantial abuse" under section 707(b) of the Code. One approach focuses on the Debtor's ability to repay debts from future income, as determined by the Debtor's ability to fund a Chapter 13 plan. *See In re Cox,* 249 B.R. 29, 31 (Bankr.N.D.Fla.2000); *In re Dickerson,* 193 B.R. 67, 71 (Bankr.M.D.Fla.1996) (citing cases from the Eighth and Ninth Circuit Courts of Appeals). The other adopts a "totality of the circumstances" approach which essentially looks to numerous factors relevant to the Debtor's financial planning. *See In re Haddad,* 246 B.R. 27, 33 (Bankr.S.D.N.Y.2000) (listing fifteen factors). The Eleventh Circuit has not yet adopted an approach to this issue, but as the court noted in *Cox,* "[r]egardless of which approach is appropriate, the common thread among the circuits is that if the debtor has the ability to repay even a portion of his debts out of future income, he should not be in Chapter 7." 249 B.R. at 31 citing *In re Lamanna,* 153 F.3d 1, 4–5 (1st Cir.1998).

■ Several factors are pertinent in evaluating the totality of the circumstances in this case. *Haddad,* 246 B.R. at 33. For instance, the *Haddad* Court considered whether the petition was filed because of a sudden illness or calamity, whether the debtor's expenses could be reduced significantly without depriving the debtor of adequate food, clothing, shelter and other necessities, and whether there were no other choices available to the debtor for working out financial problems other than Chapter 7. In this case, the Debtor testified he had some financial setbacks as a result of his divorce, but the Court does not consider this to be the precipitating factor in filing this case. Although the Debtor's lifestyle is not extravagant, it does appear the Debtor spends too much on items not considered by the Court to be reasonably necessary for the Debtor's maintenance and support. In Schedules I and J, the Debtor shows monthly disposable income in the amount of only $72.09. However, if the Debtor reduced unnecessary or excessive expenses, he would have over $1,200.00 in disposable income to contribute to a repayment plan under Chapter 13.

Currently, the Debtor spends $1,000.00 per month to provide food, shelter and maintenance to two horses valued in dollars at $0. The Court is sympathetic to the charitable actions of the Debtor in taking care of the two horses which he utilized as a police officer, but the Court does not believe the $1,000.00 monthly expense is necessary for the Debtor's maintenance and support during the pendency of a hypothetical Chapter 13 plan. Although admirable, such an expense does not take priority over the legal obligation to repay a creditor. Without the expenditure for the horses, which this Court does not find to be a necessary expense, the Debtor would have $1,000.00 more in disposable income to repay creditors.

The Debtor has also been making, both prior to the filing of this case and thereafter, contributions to his pension plan. The current payroll deduction for this expense is $308.00 per month. The Court can appreciate the Debtor's need to have some savings set aside for retirement, but the Debtor, who is only 47 years old, has many more years before he reaches the age of retirement, and his accumulated savings thus far are significant. The Court does not find that the contribution of 6% of the Debtor's total income is reasonably necessary for the Debtor's maintenance and support. *See Cox,* 249 B.R. at 32 citing *In re Heffernan,* 242 B.R. 812, 818 (Bankr. D.Conn.1999) (voluntary payments into a pension, savings, or investment-type plan are not an expenditure reasonably necessary for the Debtor's maintenance and support during the pendency of a Chapter

13 plan). If the Court were to allow the Debtor a modest contribution of 3% to his pension plan, the Debtor would have an additional $154 per month in disposable income that would be available for contribution into a repayment plan for the benefit of creditors.

Although the Debtor testified he had some financial setbacks as a result of a domestic dispute with his former spouse, the Court does not find that these circumstances led to the Debtor's financial straits. The Debtor's lifestyle is not lavish or extravagant; but, the Court finds that, by eliminating certain expenses not reasonably necessary for support and maintenance, the Debtor would have $1,154.00 more in disposable income. Under a hypothetical 36 month plan, the Debtor may well be able to repay the unsecured creditors nearly 100% of their claims. The Court is sympathetic to the Debtor's concern for his horses and recognizes the Debtor's care for them as a humane and charitable act. Sadly, the law does not allow a debtor to be charitable with creditors' money. When one's debts are paid, one may give all their property to kind or humane or charitable causes. But a fresh start and the discharge of one's debt is not contemplated under the law to allow a debtor to emerge from bankruptcy as a philanthropist. A debtor may not give away money to a worthy cause, no matter how worthy, when there are unpaid debts and the giving is essentially creditors' money. It is prudent to save for retirement but the intention of Congress was not to allow one to take one's current income which could be used to pay debts and exempt it from one's creditors in a retirement plan. Retirement plans, other than social security, should be funded with debtor's money, not money owed to creditors.

Thus, the Debtor may be entitled to relief under the Bankruptcy Code, but providing him relief under Chapter 7 would be a substantial abuse under 11 U.S.C. § 707(b). Therefore, for these reasons, as well as those expressed during the hearing, it is

**ORDERED AND ADJUDGED** that the *United States Trustee's Motion To Dismiss Chapter 7 Case Pursuant To 11 U.S.C. § 707(b)* is GRANTED and this case is DISMISSED, subject to the Debtor seeking, within twenty (20) days from the date of this order, reconsideration of the dismissal of this case for the purpose of converting this case to another chapter under the Bankruptcy Code.