**In re Sam Kin LEUNG, Debtor.**

**No. 03–23419–BKC–RBR.**

United States Bankruptcy Court,
S.D. Florida.

April 2, 2004.

Christopher J. Keith, Esq., Ft. Lauderdale, FL, for Debtor.

*ORDER (1) GRANTING DEBTOR'S MOTION FOR REHEARING; (2) VACATING ORDER DISMISSING CASE AND (3) GRANTING MOTION OF UNITED STATES TRUSTEE TO DISMISS THIS CASE UNDER 11 U.S.C. § 707(b)*

RAYMOND B. RAY, Bankruptcy Judge.

This matter came before the Court for hearing on December 3, 2003 upon the Motion For Rehearing (C.P.16) and the Motion Of United States Trustee To Dismiss This Case Under 11 U.S.C. § 707(b) Or In The Alternative Under 11 U.S.C. § 707(a) And Motion To Extend Deadline To File A Complaint Objecting To The Debtor's Discharge Pursuant To 11 U.S.C. § 727 (C.P.11). The Court having reviewed the pleadings, having heard the arguments of counsel and being duly advised in the premises grants the relief sought for the reasons set forth hereinafter.

## FINDINGS OF FACT

Sam Kin Leung (the "Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 12, 2003 (C.P.1). The United States Trustee moves the Court to dismiss this case as a substantial abuse pursuant to 11 U.S.C. § 707(b), or for cause pursuant to 11 U.S.C. § 707(a), or in the alternative to extend the time to file an objection to the Debtor's discharge pursuant to 11 U.S.C. § 727. The United States Trustee claims that the Debtor's been continuously employed by Walgreens for at least 25 years. There is no indication that the Debtor's employment at Walgreens is about to be terminated or his salary reduced.

At the time of filing the bankruptcy petition, the Debtor's current monthly gross wages were $7,236.78 (which equates to an annual salary of $86,841.36)(Schedule I). The Debtor has monthly payroll deductions totaling $2,864.75, which results in total monthly income of $4,372.03 (Schedule I). Included in the monthly payroll deductions are the following payroll deductions totaling $747.30: (1) $144.74 for "P/S USA", which the Debtor testified is for contributions to his employer's retirement profit sharing plan; (2)

$194.87 for "Sharewig", which the Debtor testified is for voluntary purchases of his employer's (Walgreens) stock through a non-retirement employee stock purchase plan; (3) $361.84 for "Stock %", which the Debtor testified at the Hearing is for voluntary purchases of his employer's (Walgreens) stock through a non-retirement account, whereby a percentage of his salary is deducted from each paycheck to purchase such stock on the open market; and (4) $45.85 for "Univ Lif", which is apparently for Universal Life Insurance.

According to the Statement Of Financial Affairs the Debtor has not received any income other than from employment during the two years immediately preceding the commencement of this case. However, at the Hearing the Debtor testified that he has been selling shares of Walgreens at market price for a period of time. $52,797 out of the Debtor's $136,855.94 annual income (as listed on his 2002 W–2 from Walgreens) was obtained from the sale of Walgreens stock, and was not earned wages.[1]

Further review of the record shows that the Debtor's total monthly expenses are $4,354.00 (Schedule J). Some of the Debtor's expenses listed include a $630.00 monthly lease payment on a 2004 Lexus; $250.00 monthly medical and dental insurance expense; $100.00 monthly for cable television; $50.00 monthly for internet access; $268.00 monthly medicare insurance expense for his mother and $300.00 monthly expense for his mother's medications expense.

The Debtor lists on Schedule A that he owns his residence and that there is approximately $22,000.00 of equity. The Debtor also has $149,947.40 invested in his Profit Sharing Plan[2] and owns 20 shares of Walgreens, with a stated value of $30.00 (Schedule B).[3]

The Debtor lists two secured creditors on Schedule D—the mortgage on his residence (which has been claimed as exempt) in the amount of $98,000.00, and the security agreement on his 2004 Lexus automobile in the amount of $35,000.00. On Schedule F the Debtor lists twenty-five (25) unsecured nonpriority claims totaling $184,340.91.

The United State Trustee claims that the Debtor's voluntary payroll deductions for his profit sharing retirement fund, stock investments, and universal life insurance should be disallowed when determining whether the Debtor has disposable income to fund a hypothetical chapter 13 plan, and therefore the ability to repay a portion of his unsecured debt through a chapter 13 plan. Based on the aforementioned, the United States Trustee moves the Court to dismiss this case pursuant to 11 U.S.C. § 707(b), or for cause pursuant to 11 U.S.C. § 707(a), or in the alternative to extend the time to file an objection to the Debtor's discharge pursuant to 11 U.S.C. § 727.

1. The Debtor also testified that in 2002 there were other sales of Walgreens stock reflected in his 2002 Federal Income Tax return, and not reflected on his 2002 W–2. None of the income resulting from such sales were reflected on his Statement Of Financial Affairs.

2. The testimony at the Hearing indicates that he has been contributing money into his retirement account for more than a decade and is fully vested. Such contributions continued while he was accruing the credit card debt listed on Schedule F.

3. The Debtor informed the Court that the actual value of these shares is approximately $600.00, and only represents shares he had purchased through the "Stock %" payroll deductions. Schedule B does not include moneys deducted from his paycheck for participation in the "Sharewig".

## CONCLUSIONS OF LAW

With the enactment of Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 353 ("1984 Act"), "... debtors no longer have unfettered access to voluntary Chapter 7 relief ..." *In re Walton,* 866 F.2d 981, 982 (8th Cir.1989). Pursuant to the 1984 Act, Congress substantially amended section 707 of the Bankruptcy Code by adding section 707(b), which currently provides as follows:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b).

■ In order to dismiss a chapter 7 case pursuant to § 707(b), two conditions must be met. First, the debtor must be an individual with primarily consumer debts. Section 101(8) of the Bankruptcy Code defines consumer debt as "... debt incurred by an individual primarily for personal, family, or household purpose ...". Courts have consistently applied this definition for the purposes of § 707(b). *In re Stewart,* 175 F.3d 796, 806 (10th Cir. 1999). Second, the court must find that the "granting of relief would be a substantial abuse of the provisions of this chapter." Section 707(b) establishes a presumption in favor of granting the relief sought by the debtor.

## CONSUMER DEBTS

The Court finds that the Debtor is an individual with primarily consumer debts. All, or clearly the majority, of the Debtor's unsecured debts listed on Schedule F are credit card debts.[4] The Debtor testified at the Hearing that none of these debts were business debts, and from the descriptions on Schedule F included with respect to these debts, it appears that all, or clearly the majority, of these debts were incurred for a personal, family, or household purpose. Likewise the two secured debts listed on Schedule D (the mortgage on the Debtor's residence and the security interest in his automobile) both are consumer debts.

## SUBSTANTIAL ABUSE

While the Bankruptcy Code does not define "substantial abuse", it is clear that section 707(b) was enacted in the 1984 Act as a result of Congress' concern that consumer borrowers had been filing chapter 7 liquidation cases in record numbers following the enactment of the Bankruptcy Code in 1978 and discharging progressively higher amounts of consumer debts, which a significant minority had the capacity to repay. *In re Stewart,* 175 F.3d 796, 806, footnote 8 (10th Cir.1999);*In re Lamanna,* 153 F.3d 1, 3–4 (1st Cir.1998); *In re Green,* 934 F.2d 568, 570 (4th Cir.1991); *In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989).

■ In the Southern District of Florida, the primary factor to be considered in determining whether granting relief would be a substantial abuse within the meaning of 11 U.S.C. Section 707(b) is "the debtor's ability to pay debts when due, as deter-

---

4. As the Tenth Circuit noted in *Stewart,* although the credit card industry lobbied Congress for the passage of section 707(b), Congress did not expressly confine the use of section 707(b) to cases with credit card debt.

Thus, this Court is given the flexibility to determine potential substantial abuse in cases involving other than credit card abuse. *Stewart,* 175 F.3d at 806, footnote 9.

mined by the ability to fund a Chapter 13 plan" *In re Matias,* 203 B.R. 490 (Bankr. S.D.Fla.1996). The Southern District of Florida has also adopted a "totality of circumstances" standard, which finds that if the debtor has the ability to repay even a portion of his debts out of future income, he should not be in a Chapter 7. *In re Dorwarth,* 258 B.R. 293 (Bankr.S.D.Fla. 2001).

■ In the instant case, the Court rejects the Debtor's arguments made at the Hearing that in order to dismiss a case pursuant to section 707(b), the Court must find that a debtor has engaged in dishonest conduct and that substantial abuse can only exist when a debtor's lifestyle is luxurious. The finding of "bad faith" is not a prerequisite to section 707(b) dismissal. *In re Green,* 934 F.2d at 568.

Courts often analyze the ability of a debtor to repay its creditors in the context of a hypothetical chapter 13 case, using chapter 13 concepts. *E.g., Koch,* 109 F.3d at 1288; *Walton,* 866 F.2d at 984–85. Such an analysis utilizes the concept of "disposable income," 11 U.S.C. § 1325(b)(1)(B), which is defined in part as income reasonably necessary to be expended for the maintenance and support of the debtor, including certain charitable contributions. 11 U.S.C. § 1325(b)(2)(A).

■ The Debtor's payment or contributions *into any type of account, fund, plan or other repository* for the Debtor's own present or future benefit for savings, pension, or similar purposes is on its face "not reasonably necessary to be expended ... for the maintenance or support of the debtor or a dependent of the debtor." If such money were "necessary for the maintenance or support of the debtor," obviously the Debtor could not put it in a savings or pension account.

In addition to the clear language of the statute, most courts have perceived an inherent unfairness in a debtor paying himself by funding his own savings account, retirement plan, or pension fund while paying creditors only a fraction of their just claims.[5] For these reasons the great majority of courts have held under Section 1325(b) that funds contributed to savings or pension plans constitute "disposable income" that must be paid to creditors under a plan if the plan is to be confirmed.[6]

■ The Debtor testified at the Hearing that the $144.74 ("P/S USA") payroll deduction listed on Schedule I is for a retirement profit sharing plan with Walgreens (his employer). The Court finds that this deduction is not necessary for the Debtor's maintenance and support. Therefore, the payroll deduction of $144.74 for the Walgreens' profit sharing plan is not appropriate when determining the Debtor's disposable income.

The Debtor also testified that the $194.87 ("Sharewig") and $361.84 ("Stock %") payroll deductions listed on Schedule I were voluntary investments to purchase his employer's (Walgreens) stock, and are not part of any retirement plan (the Debt-

---

5. Judge Cristol noted in *Dorwarth* that "It is prudent to save for retirement but the intention of Congress was not to allow one to take one's current income which could be used to pay debts and exempt it from one's creditors in a retirement plan. Retirement plans, other than social security, should be funded with debtor's money, not money owed to creditors." *Dorwarth,* 258 B.R. at 296.

6. *See Anes v. Dehart (In re Anes),* 195 F.3d 177, 180–81 (3d Cir.1999); *In re Prout,* 273 B.R. 673 (Bankr.M.D.Fla.2002); *In re Merrill,* 255 B.R. 320 (Bankr.D.Or.2000); *In re Hansen,* 244 B.R. 799, 802 (Bankr.N.D.Ill.2000); *In re MacDonald,* 222 B.R. 69, 75 (Bankr. E.D.Pa.1998); *In re Lampkin,* 221 B.R. 390, 393 (Bankr.W.D.Tex.1998); *In re Feldmann,* 220 B.R. 138, 145 (Bankr.N.D.Ga.1998).

or holds the stock in his own name). The Debtor has been purchasing such stock for a period of time prior to the filing of this case and testified at the Hearing that he has been selling most of the purchased Walgreens stock. These deductions clearly are not necessary for the Debtor's maintenance and support.

 Based upon the same rationale that the Debtor's payroll deductions for his retirement profit sharing plan is not appropriate in determining the Debtor's disposable income, the Court finds that the payroll deductions totaling $556.71 for these two investments are not appropriate when determining the Debtor's disposable income. Additionally, the $45.85 monthly payroll for Universal Life Insurance are not necessary for the Debtor's maintenance and support, and therefore not appropriate when determining the Debtor's disposable income.

The facts in this case clearly illustrate that the Debtor has the ability to hypothetically fund a chapter 13 plan with monthly disposable income of at least $765.33.[7] This would result in approximately $27,551.88 being available to fund a 36 month chapter 13 plan, or approximately $45,919.80 being available to fund a 60 month chapter 13 plan, without any reduction to the expenses set forth on Schedule J. Accordingly, the Court finds that the granting of relief to this Debtor would constitute a substantial abuse of the bankruptcy process as set forth in 11 U.S.C. § 707(b). Therefore it is,

**ORDERED and ADJUDGED** that

1. The Rehearing Motion (C.P.16) is GRANTED

2. The Dismissal Order (C.P.14) is VACATED;

3. The Motion Of United States Trustee To Dismiss This Case Under 11 U.S.C. § 707(b) is **GRANTED**.

4. This case is dismissed with prejudice to the filing of a petition under Chapter 7 of the Bankruptcy Code for a period of twelve (12) months from the date of this Order.

5. The Court shall retain jurisdiction to enforce the provisions of this Order.

7. $4,372.03 monthly income listed on Schedule I, plus $701.45 disallowed monthly payroll deductions for the two stock investments and retirement profit sharing contributions, plus $45.85 disallowed monthly payroll deductions for the Universal Life Insurance, equals $5,119.33 adjusted monthly income; $5,119.33 adjusted monthly income, minus $4,354.00 of total monthly expenses listed on Schedule J, equals $765.33.