**In re Dr. John Louis GENTRI and Donna Marie Gentri, Debtors.**

**Bankruptcy No. 94–5806–8G7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 11, 1995.

Michael Markham, Clearwater, FL, for John and Donna Gentri.

Gordon Kiester, U.S. Trustee, Tampa, FL, for trustee and Atty. for trustee.

## ORDER ON UNITED STATES TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO 11 U.S.C. § 707(b)

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came on for hearing on the United States Trustee's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b). In the Motion, the United States Trustee (the "Trustee") requests that this Chapter 7 Case be dismissed pursuant to § 707(b) because granting relief would be a substantial abuse of the provisions of Chapter 7 of the Bankruptcy Code. In response to the Motion, the Debtors assert that their debts are not primarily consumer debts, and that granting relief to the Debtors would not be a substantial abuse of Chapter 7.

Until the day of this hearing, Dr. Gentri was employed by EMSA, a national health care organization, as a staff physician. Since his financial difficulties began, generally in the spring of 1992, Dr. Gentri has worked as many as 80 hours per week, attempting to work through his financial problems. In mid–1994, Dr. Gentri decided to file for bankruptcy protection. Additionally, he decided that he would reduce the number of hours he was working. Ultimately he decided to resign from his job entirely, and on the morning of this hearing, the first time he had seen the person in charge of his employment since deciding to resign, he resigned. The resignation is consistent with Dr. Gentri's long term plans. Dr. Gentri also testified that he and his wife plan to go to Africa as medical missionaries. Donna Marie Gentri is not employed. The Debtors have three children ranging in age at the time of the filing of the joint petition from approximately 3 months old to 9 years of age.

The Debtors' Schedules of Assets and Liabilities show the following debts:

| Creditor | Amount | Purpose |
|---|---|---|
| Barnett Mortgage | $158,605 | purchase & repair home |
| Barnett Bank | 14,208 | repairs to home |
| Green Tree Financial | 16,979 | repairs to home |
| SBA | 9,373 | repairs to home |
| County Tax Collector | 2,194 | real property taxes |
| IRS | 20,000 | income tax on forgiven debt—Connecticut house |
| Sun Bank | 31,024 | van |
| Sun Bank | 104,285 | office equipment |
| Citibank | 5,204 | consumer items |
| Coulter Leasing | Unknown | guaranty on office equipment lease |
| Fin. Collection | 5,236 | student loan |
| Pamela C. Faill | 57,000 | property settlement—student loan |
| Sallie Mae | 8,144 | student loan |
| Shawmut Bank | 40,048 | deficiency from sale of Connecticut house |
| Spring Hill Regional Hospital | 25,000 | business loan |
| Sun Bank VISA | 2,900 | consumer items |
| Volvo Finance | Unknown | auto loan |
| Total Debt | $500,200 | |

In their Schedules of Current Income and Expenditures, the Debtors show that Dr. Gentri's net monthly salary at the time of filing the petition was $8,700.00, and that monthly expenditures were $8,916.67. Consequently, scheduled expenses exceeded scheduled income by $216.67.

The Trustee alleges that the Debtors actually have, or had at the time of filing, monthly disposable income which could be used to fund a Chapter 13 Plan. Although not disclosed in the Schedules, the Debtors later stated in interrogatories that they received a net income of $3,795.92 for the first 6 months of 1994, or $632.65 monthly, from the Amway Corporation. Including this in their net monthly income would give the Debtors $415.98 in monthly disposable income. In addition, the Trustee questions several of the Debtors' expenses and argues that if these were reduced to a more reasonable level, the Debtors would be able to pay a significant amount to their unsecured creditors. The items questioned by the Trustee are: $1,000.00 per month for charitable contributions; $1,394.00 per month for a property settlement payout to Dr. Gentri's former wife, which the Trustee argues will be discharged by this bankruptcy; $200.00 per month for telephone; $300.00 for transportation; $200.00 for recreation; $250.00 per month for health; $250.00 per month for disability; $1,000.00 per month for the IRS; and $520.00 per month for automobile expenses. The Trustee asserts that if the Debtors amended their budget to include their income from the Amway Corporation and exclude charitable contributions and payments on the husband's property settlement with his former wife, the Debtors would have $2,810.65 in monthly disposable income, which would repay more than $100,000.00 to unsecured creditors in 36 months. The Trustee argues that the Debtors have the ability to pay a substantial portion of their creditors, their income is stable, and the Chapter 7 filing was not precipitated by a sudden illness or calamity. Based on these facts, the Trustee asserts that the Chapter 7 case should be dismissed.

Section 707 of the Bankruptcy Code provides that a court may dismiss a case of an individual debtor under Chapter 7 whose debts are primarily consumer debts if the granting of the relief provided by Chapter 7 would be a substantial abuse of that Chapter:

**11 U.S.C. § 707. Dismissal**

.     .     .     .     .

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

When evaluating possible dismissal pursuant to § 707(b) of a Chapter 7 case filed by an individual, the Court must first determine whether the debts are primarily consumer debts, and if they are, then the Court must consider whether the granting of relief would be a substantial abuse of the provisions of Chapter 7. There is an expressed presumption in favor of granting the relief requested by the Debtors.

### Nature of the Debts

The first question which the court must address is whether the debts are primarily consumer debts. There is a dispute as to whether the Debtors' debts are primarily consumer debts, and the issue is whether or not the Court should consider the debts secured by the Debtors' home when making this determination. The Trustee argues that all non-business debts are consumer debts, and even if not, debts for acquiring and improving a personal residence are consumer debts. The Debtors argue that the debt secured by a residence is a major obligation, the largest obligation by far of the average individual, and that Congress did not intend for this type of debt to be considered when determining whether or not the debts are primarily consumer debts. If this type of debt were considered, the Debtors argue, almost every individual bankruptcy would involve primarily consumer debts.

The Trustee cites case authority. The Debtors refer to Congressional intent.

■ The statute clearly defines consumer debt, and where the statute is clear the court need not and should not look beyond the statute unless the result is demonstrably at odds with the intentions of the drafters. *See*

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

■ Accordingly, in accordance with the Code, the Court will evaluate the nature of the debts fairly mechanically to determine this threshold issue, and will examine carefully the nature of the debts and the effects of the relief sought on these debts in evaluating substantial abuse.

Consumer debt is defined by the Code: **11 U.S.C. § 101. Definitions**

.    .    .    .    .

(8) "consumer debt" means debt incurred by an individual primarily for a personal, family, or household purpose.

.    .    .    .    .

■ Therefore, the Court should look to the purpose of incurring the debt to determine whether it is consumer debt. Debts incurred for the purpose of acquiring, improving, and repairing the residence of a debtor and his family are debts incurred for personal, family, and household purposes. "It is difficult to conceive of any expenditure that serves a 'family ... or household purpose' more directly than does the purchase of a home and the making of improvements thereon." *In re Kelly*, 841 F.2d 908, 913 (9th Cir.1988).

Four out of the six secured claims, totalling $199,165 of the $334,474 of the secured claims, are for debts incurred in purchasing, improving, and repairing the Debtors' homestead property, and are consumer debts. *See Id.* One of the two remaining secured claims was incurred to purchase a 1994 BMC Vandura 2500 Van, which has been claimed by the Debtors as exempt personal property, and is also a consumer debt. The only secured claim which is not a consumer debt is the business loan in the amount of $104,285 secured by office medical equipment. Therefore, $230,188 of the $334,474 secured claims are consumer debts.

■ The county tax collector's debt is for taxes on the personal residence and is a consumer debt. The debt to the IRS arises from the forgiveness of a debt incurred to purchase a personal residence in Connecticut

and is also a consumer debt. Although that residence was later converted to rental property, and the debt for its improvement to convert it to rental property is a business debt, the loss resulting from its sale would have been experienced whether or not the property was converted to rental property, so the loss retains the same character as the original loan and the tax liability arising from the forgiveness of the debt for the loss also has that character. Two of the unsecured claims totalling $8,104 were admittedly incurred through consumer credit card purchases. The Trustee acknowledges that the student loans, which total $13,380, are business loans, since they were incurred for Dr. Gentri's medical education. For the purpose of this analysis, the Court considers the unsecured debt to the husband's former wife, $57,000, also a business debt. The Debtor testified that this debt is to repay his former wife for funds which her father provided to him for his medical education. Although apparently this was not a formal loan allocated to him in his divorce, the purpose of this obligation is to repay funds provided to Dr. Gentri for his medical education. The Court accepts this explanation, and like the student loans considers this to be a business debt. The $40,000 debt to the Shawmut Bank was a loan to improve the Connecticut house in anticipation of renting the house. The proceeds from the sale of that house were not sufficient to repay this, and it remains an obligation of Dr. Gentri. It is a business debt. There is also a $25,000 obligation to Spring Hill Hospital which the Trustee acknowledges is a business debt.

■ Therefore, at least $260,000 of the total scheduled liabilities of $500,200 were incurred as consumer debts, and the Court concludes that the Debtors' obligations are primarily consumer debts as defined by 11 U.S.C. § 101(8). The threshold test of § 707(b) is met.

### Substantial Abuse

While the determination of the nature of the debts is fairly mechanical, the determination of whether granting relief would be a substantial abuse of the provisions of Chapter 7 involves a careful analysis of the circumstances and the thoughtful exercise of the discretion entrusted to this Court.

■ The fact that a debtor's debts are primarily consumer debts does not mean that the filing is a substantial abuse, but simply places the court in a position to evaluate whether or not the relief sought is a substantial abuse of the provisions of Chapter 7. For dismissal of a case, the abuse must be substantial. A presumption is specifically expressed in favor of the relief. The Code contains many protections for creditors. The bankruptcy court is ultimately a court of equity, and many things must be evaluated when considering whether or not the filing is a substantial abuse.

■ There are a number of bankruptcy court and circuit court cases discussing guidelines for determining substantial abuse of Chapter 7. In all of these, the ability to repay creditors is a factor which is considered. In some cases it is the exclusive factor; in others, the primary factor. This Court agrees with the reasoning in the case *In re Green*, 934 F.2d 568 (4th Cir.1991), in which the ability to repay creditors is a factor to be considered along with other factors. That case concludes that the substantial abuse determination must be made on a case by case basis, in light of the totality of the circumstances. In *Green*, the court stated at page 572:

The 'totality of the circumstances' approach involves an evaluation of factors such as the following:

1. Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

2. Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

3. Whether the debtor's purposed family budget is excessive or unreasonable;

4. Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

5. Whether the petition was filed in good faith.

Exploring these factors, as well as the relation of the debtor's future income to his future necessary expenses, allows the court to determine more accurately whether the particular debtor's case exemplifies the real concern behind Section 707(b): abuse of the bankruptcy process by a debtor seeking to take unfair advantage of his creditors. The debtor's relative solvency may raise an inference that such a situation exists. Nevertheless, in light of the statutory presumption that a debtor's Chapter 7 petition should be granted, solvency alone is not a sufficient basis for finding that the debtor has in fact substantially abused the provisions of Chapter 7.

■ For an analysis of whether the granting of relief would be a substantial abuse, the relief which would be granted must first be evaluated. Accordingly, the Court will first consider the effects of granting the relief requested, and will then consider the factors enumerated in the Green case.

■ **1. Effects of granting the relief.** A Chapter 7 bankruptcy generally discharges all debts that arose before the date of the order for relief. *See* 11 U.S.C. § 727(b). There are some exceptions, however. *See* 11 U.S.C. § 523. Additionally, liens survive. *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886). Following is a listing of the Debtors' debts, separated into business and consumer categories, with one grouping showing all debts, and a second grouping showing dischargeable [1] debts only.

| Creditor | ALL DEBTS | | DISCHARGEABLE DEBTS | |
| --- | --- | --- | --- | --- |
| | Business | Consumer | Business | Consumer |
| Barnett Mortgage | | $159,000 | | $ 2,000 |
| Barnett Bank | | 14,000 | | 14,000 |
| Green Tree Fin. | | 17,000 | | 17,000 |
| SBA | | 9,000 | | 9,000 |
| County Tax | | 2,000 | | 2,000 |
| IRS | 20,000 | | | |
| Sun Bank | | 31,000 | | |
| Sun Bank | $104,000 | | $104,000 | |
| Citibank | | 5,000 | | 5,000 |
| Coulter Leasing | Unknown | | | |
| Fin. Collection | 5,000 | | | |
| Pamela C. Faill | 57,000 | | 57,000 | |
| Sallie Mae | 8,000 | | | |
| Shawmut Bank | 40,000 | | 40,000 | |
| Spring Hill Regional Hospital | 25,000 | | 25,000 | |
| Sun Bank VISA | | 3,000 | | 3,000 |
| Volvo Finance | | Unknown | | Unknown |
| | $239,000 | $260,000 | $226,000 | $52,000 |

When the effect of the granting of relief is reviewed, it becomes apparent that the debts

---

1. For the purpose of this analysis, the Court is not making a determination as to whether various debts are or are not dischargeable, but is simply assuming the likely effects of the bankruptcy based on the schedules. Generally, the Court is considering that the non-private student loans and taxes are not dischargeable. The residence is valued at $157,000 on the schedules, so debts secured by the residence are secured to this extent, and the principal effect of bankruptcy will be on the amount of these debts in excess of the value of the security. The van was purchased shortly before the filing, and the Debtors have indicated that they intend to retain the van. Since the debt to Pamela Faill is scheduled as a property settlement, the Court will consider it as dischargeable for the purpose of this analysis, but makes no determination of whether it is, in fact, a property settlement or in the nature of alimony, maintenance, or support.

effected are not primarily consumer debts. The principal effect of granting relief will be to discharge business debts. Additionally, the consumer debts for the residence which will be effected by the discharge were for repairs necessitated by uninsured damage done to the residence by the "no-name" storm. Credit card debt is practically insignificant compared to the other debts.

**2. Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment.** In this case, although the petition was not filed because of sudden illness, calamity, disability, or unemployment, there were identifiable events which led to its filing. In 1992, the hospital for which the Debtor worked filed for bankruptcy. Dr. Gentri had come to Florida to establish a specialized department for that hospital. Because he was devoting his efforts to establishing that department, he did not develop a private practice. After the hospital filed for bankruptcy, it terminated the department, and Dr. Gentri had to secure new employment. In addition, after moving to Florida Dr. Gentri sold his former home in Connecticut at a loss of $120,000. Part of this $120,000 loss is the unsecured deficiency owed to Shawmut Bank. Although the other part of the loss was forgiven by the first mortgagee, the IRS claims that Dr. Gentri owes $20,000 in income taxes as a result of the forgiveness of this debt. Also, the "no-name" storm caused substantial damage to the Debtors' residence which was not covered by insurance. By working long hours, Dr. Gentri tried to work through these problems. He eventually concluded that he could not, and the Gentris filed their petition.

**3. Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay.** This did not occur.

**4. Whether the debtor's proposed family budget is excessive or unreasonable.** In some respects, the Debtors' proposed budget would be considered excessive and unreasonable if it accurately reflected their true financial condition. However, for the reasons stated below, the proposed budget does not accurately reflect their current financial condition.

**5. Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition.** The Debtors' statement of current income and expenses appears to have been accurate when it was filed, but it does not reflect their financial condition at this time. Dr. Gentri satisfactorily explained that the Amway result for the first six months of 1994 was a loss of $3,600 rather than a profit of that amount. More important, however, is the fact that after the Debtors filed the bankruptcy, Dr. Gentri cut back on the number of hours he worked, and he has now resigned entirely to eventually become a medical missionary. These events have affected and will affect his income by reducing it significantly. The Trustee urges the Court to consider only the circumstances at the time of filing, rather than as they exist today. However, the *Green* court states that current circumstances are relevant to the analysis: "Exploring these [enumerated] factors, as well as the relation of the debtor's future income to his future necessary expenses, allows the court to determine more accurately whether the particular debtor's case exemplifies the real concern behind Section 707(b): abuse of the bankruptcy process by a debtor seeking to take unfair advantage of his creditors." *Green*, 934 F.2d at 572.

**6. Whether the petition was filed in good faith.** After the loss of his position at the hospital, the substantial loss on the sale of the Connecticut house, and the uninsured storm damage, Dr. Gentri attempted to work through his financial difficulties. He concluded that he was not able to, and the Debtors filed this petition. The Court believes that this petition was filed in good faith.

### Conclusion

The bankruptcy laws exist to provide honest debtors in financial difficulties with relief from those difficulties and a fresh start. Section 707(b) exists to prevent substantial abuses of the bankruptcy laws. The determination of whether or not the granting of relief would be a substantial abuse of the provisions of Chapter 7 is entrusted to the bankruptcy courts as courts of equity.

Evaluating the factors as described above leads this Court to the clear conclusion that granting the relief requested by the Debtors would not be a substantial abuse of the provisions of Chapter 7.

Accordingly:

**IT IS ORDERED** that the United States Trustee's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b) is denied.