**In re John WEBER and Lynn Weber**

**No. 96–11966–9P7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 6, 1997.

Louis X. Amato, Naples, FL, for debtors.

Stephany S. Carr, Naples, FL, trustee.

T. Patrick Tinker, Tampa, FL, movant.

## ORDER ON MOTION TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is a Motion to Dismiss the above-captioned case pursuant to Section 707(b) of the Bankruptcy Code. The Motion, filed by the Office of the United States Trustee (U.S.Trustee), alleges that a substantial portion of the unsecured debts of Mr. and Mrs. Weber (Debtors) are consumer debts and to permit these debtors to discharge their debts in Chapter 7 would be an abusive use of the Bankruptcy Code. The U.S. Trustee argues that unless these Debtors are willing to convert their case from Chapter 7 to Chapter 13, their case should be dismissed. The undisputed facts relevant to the issue raised by the U.S. Trustee as they appear from the record are as follows:

Although the Debtor husband has a checkered employment history, he is currently employed as Vice President in charge of sales and marketing for Orchid Island Golf and Beach Club (Orchid Island) in Vero Beach, Florida. The Debtor's Employment Agreement executed on August 30, 1996, (Debtor's Exh. No. 1), provides for a $7,000.00 per month salary plus additional monthly compensation in the amount of $3,000.00 as an advance against earned commissions based on his sales. By September of 1997, the Debtor's salary will terminate and his compensation will be a $10,000.00 monthly advance against earned commissions, with commission advances to be increased up to fifty percent of commission receivables as fully

contracted sales are closed. In addition, the Debtor is to receive a car allowance in the amount of $500.00 per month and health insurance for himself and his family.

The Debtor currently receives free housing for one year, however, the Employment Agreement requires him to pay all expenses connected with occupying the home, such as telephone and utilities. The Employment Agreement also requires the Debtor to reside at Orchid Island. He will be required, therefore, to purchase a home for which his company offers him a fifteen percent discount. Currently, homes in the development of Orchid Island sell for over $500,000.00. The Employment Agreement also has a termination clause which provides that if the Debtor's employment is terminated during his first year of employment, Orchid Island will give the Debtor compensation of not less than $80,000.00. After the first year, the Debtor's severance pay will be $40,000.00.

Prior to working for Orchid Island, the Debtor was employed as Vice President in charge of sales and marketing for Vineyards Realty Inc, (Vineyards) in Naples, Florida. According to the Debtors' Statement of Financial Affairs, for the first nine months of the 1996 tax year, the Debtors' gross taxable income was $85,721.00 and for the 1995 tax year was $77,693.00.

At trial, the Debtor submitted an amended monthly budget which differs from the original budget submitted with the Petition. His revised monthly budget lists current net income in the amount of $6,751.48 plus a $461.00 car allowance, which gives him a total monthly income of $7,212.48. His expenses are listed at $5,162.00, leaving the Debtors disposable income in the amount of $2,050.48.

According to the Debtors' Schedules, the Debtors' total unsecured debt is approximately $177,210.00, which includes a $10,-000.00 debt owed to the IRS for 1995 income taxes. It is conceded that this $10,000.00 was included in error, therefore, the unsecured debt should be revised to indicate a total amount of $167,210.00. Of the total, the amount of $19,100.00 is owed to Dale Stanecki, the Debtor wife's father. Also, the amount of $65,000.00 was owed originally to National City Bank but was paid off by the

Debtor husband's stepfather, Harry Bolwell, who is listed on Schedule H as a Codebtor.

Section 707(b) was added to the Bankruptcy Code in 1984 as part of the restructuring of the bankruptcy courts' jurisdiction. The restructuring was necessitated by the United States Supreme Court's decision of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which invalidated the jurisdictional structure of the Bankruptcy Reform Act of 1978, 28 U.S.C. § 1471(a), (b) and (c).

Section 707(b) of the Bankruptcy Code provides,

> (b) After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

Congress failed to furnish a definition of the term "substantial abuse" as used in 11 U.S.C. § 707(b). All commentators agree that there is no meaningful legislative history which would help to determine the intended scope of this amendment. *See* Gross, *Preserving A Fresh Start For The Individual Debtor: The Case For Narrow Construction of the Consumer Credit Amendments,* 135 U.Pa.L.Rev. 59, 66–67; Balser, *Section 707(b) of the Bankruptcy Code,* 19 J.L. Reform 1011, 1018; Breitowitz, *New Developments in Consumer Bankruptcies: Chapter 7 Dismissal On the Basis of "Substantial Abuse",* 59 Am. Bankr. L.J. 327, 336, 344.

Despite the lack of legislative history, there is a general consensus on two points. First, the amendment was the result of intense pressure on Congress by the consumer credit industry which, ever since the enactment of the Bankruptcy Code in 1978, viewed the Code provisions dealing with individual debtors as unfair. The consumer credit industry viewed the Code provisions as luring

debtors to abusive practices by choosing the easy way out in Chapter 7 when they have the financial means to propose a repayment plan under Chapter 13. The second point is that earlier attempts to establish a threshold future income test to determine eligibility for relief under Chapter 7 have been consistently rejected by Congress. This test would have barred Chapter 7 relief to Debtors who had an ability to repay a substantial portion of their scheduled debts. H.R. 4786, 97th Congress, 1st Sess. (1981); S.2000, 97th Congress, 1st Sess., 127 Cong. Rec. 32, 195 (1981); S. 445 (reintroduction of S.2000), 98th Cong., 1st Sess., 129 Cong. Rec. S. 5728 (daily ed. April 28, 1983).

It is not surprising that courts called upon to construe the scope of the amendment fail to agree upon the true intent of Congress and the proper application of the mandate of Section 707(b). The majority of courts which considered the scope of Section 707(b) provide an expansive interpretation of the "substantial abuse" language, concluding that the ability to repay debts out of future income is the primary, if not the only factor to be considered in determining whether a particular Chapter 7 case should be dismissed for "substantial abuse." *See U.S. Trustee v. Harris*, 960 F.2d 74 (8th Cir.1992); *In re Krohn*, 886 F.2d 123 (6th Cir.1989); *In re Walton*, 866 F.2d 981 (8th Cir.1989). Some other courts concluded that the determination of whether a Chapter 7 case should be dismissed for substantial abuse pursuant to Section 707(b) should be made on a case by case basis after considering the totality of the circumstances, bearing in mind that the basic purpose of Chapter 7 is to provide honest debtors with a fresh start. *See Matter of Dubberke*, 119 B.R. 677 (Bankr.S.D.Iowa 1990).

In the case of *In re Keniston*, 85 B.R. 202 (Bankr.N.H.1988), the bankruptcy court held that the ultimate test should be the lack of good faith, or the converse of bad faith, of the debtor seeking relief under Chapter 7, citing *Collier on Bankruptcy* ¶ 707.03, at 707–9 (15th ed.1988); *In re Sacramento Metropo. Real Estate Investors*, 28 B.R. 228 (Bankr.E.D.Ca.1983); *In re Khan*, 35 B.R. 718 (Bankr.W.D.Ky.1984); *In re Dyke*, 58 B.R. 714 (Bankr.N.D.Ill.1986).

This Court is in full agreement that the lack of good faith is certainly an important factor in considering a motion to dismiss a Chapter 7 case for substantial abuse. A telling sign and a red flag indicating bad faith is an inflated budget, especially an amended budget after the Debtor's right to remain in Chapter 7 is challenged. Lack of candor at the meeting of creditors, misleading, incorrect, or outright false information on the Statement of Financial Affairs or on the Schedules, coupled with sufficient disposable income will no doubt warrant a dismissal.

Considering this record, it appears at first blush that the Debtors are certainly able to fund a meaningful repayment plan under Chapter 13, even with the nondischargeable obligation owed to the Internal Revenue Service. Disregarding approximately $85,000.00 in family loans, which certainly should not be paid back first, and deducting the same from the total by making a plan with payments of $1,500.00 for 60 months, would produce a dividend to non-insider creditors of 80% would still would leave Debtor with a cushion of $500.00 per month. This conclusion is more than warranted even without considering the propriety of certain expense items and excluding them from his proposed budget as excessive, such as $600.00 private school payments. *See In re Nolan*, 140 B.R. 797 (Bankr.Colo.1992).

To overcome this picture, the Debtor attempted to portray the uncertainty of his future, stating that after his salary terminates he will have to depend solely on commissions. But, of course this is not a unique proposition for anybody involved in sales. The uncertainty of this proposition has a hollow ring, especially in light of the Debtor's statement that Orchid Island is an upscale, high priced, exclusive development. In fact, the Debtor's short track record belies the uncertainty of the Debtor's financial future. For example, between September 1996 and February 1997, the Debtor closed five sales and earned $21,280.00 or $3,546.00 per month in commissions, which was $546.00 per month more than his commission advances.

Debtor's counsel points out, however, that after September the Debtor will depend solely on his monthly commission of $10,000.00 which is dependent upon the Debtor's sales ability. It is a well known fact that persons who sell on a commission basis have an irregular income because their earnings depend exclusively on sales. Notwithstanding this fact, it is equally true that numerous people in the United States earn quite a nice living working strictly on commission and numerous people have become quite wealthy from their irregular commission income. To accept the proposition that one should not compel a debtor engaged in sales to seek relief under Chapter 13 just because his income is uncertain and unpredictable would eliminate a large segment of debtors from the benefit of the Bankruptcy Code.

Having considered the totality of the picture and the controlling legal principles, this Court is satisfied that even though there is no allegation or proof here of bad faith on the part of the Debtor, this Court is satisfied that to permit the Debtor to maintain this case under Chapter 7 would be an abuse of the bankruptcy process. Thus, the U.S. Trustee's Motion is well taken and should be granted.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the United States Trustee's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b) be, and the same is hereby, granted and this case shall be dismissed unless converted to a Chapter 13 case within 15 days from the date of the entry of this Order.