**In re Kimberly A. HALL, Debtor.**

**No. 00–02166–8C7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 24, 2001.

---

John A. Colton, Sarasota, for Debtor.

Traci K. Strickland, St. Petersburg, Trustee.

Benjamin E. Lambers, Timberlake Annex, Tampa, Office of United States Trustee.

### MEMORANDUM OF DECISION

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This case came on for trial on November 27, 2000, of the issues raised in the United States trustee's motion to dismiss the debtor's Chapter 7 bankruptcy case (Document No. 6). In the motion, the United States trustee asserts that the bankruptcy filing is a substantial abuse of the Bankruptcy Code because the debts to be discharged are primarily consumer debts and because the debtor has the present and future ability to pay creditors. Pursuant to Section 707(b) of the Bankruptcy Code, therefore, the United States trustee urges

that the court dismiss the case. In response, the debtor argues that her debts are primarily business debts and Section 707(b) is therefore inapplicable. She further argues that a recent divorce precipitated her bankruptcy filing and militates against a dismissal under Section 707(b).

## I.

The debtor filed her voluntary petition under Chapter 7 of the Bankruptcy Code on February 16, 2000. The court has jurisdiction of the parties and the subject matter pursuant to 11 U.S.C. §§ 101 *et seq.*, 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the standing, general order of reference entered by the district court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). This is also a contested matter governed by F.R.B.P. 9014.

Based upon the testimony and evidence, the court makes its findings of fact and conclusions of law as required by F.R.B.P. 7052 in this memorandum of decision.

## II.

The debtor's financial problems began in 1993 when she and her former husband started a business, Icelab, Inc. ("Icelab"). The debtor funded the start up and operating costs through credit and cash advances from her personal credit card accounts. The debtor contributed $19,000 to the business prior to 1996 and an additional $33,000 thereafter. Despite their best efforts, the debtor and her former husband were unable to maintain the business as a going concern, and the business closed in 1998.

Soon after, the debtor's marriage ended. The debtor and her former husband entered into a marital settlement that was incorporated into the final judgment of dissolution of marriage. In the marital settlement, the debtor agreed to pay alimony and attorney's fees to her former husband or on his behalf. The debtor also agreed to accept liability for all of the marital debts other than the purchase money mortgage on the marital residence that the former husband received. The debtor's former husband accepted liability for that mortgage debt.

The debtor sought relief from these obligations by filing a petition under Chapter 7 of the Bankruptcy Code. The debtor listed in her schedules secured debt in the amount of $82,198.33 [1] and unsecured debt in the amount of $79,102.80. The debtor listed no priority debt. Although not listed on her schedules, the debtor also owes alimony in the amount of $9,900 [2] to her former husband and an additional $1,202 in credit card debt. In her schedules of current income and expenditures, the debtor stated her net monthly salary at the time of filing the petition as $4,690 and her monthly expenditures as $4,366, leaving a net monthly disposable income of $324.

The United States trustee moved to dismiss the bankruptcy case pursuant to the provisions of Section 707(b) of the Bankruptcy Code. That section provides in pertinent part that:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

1. $19,08.40 of that debt represented a car lease. The parties stipulated that the lease terminated and the debtor surrendered the car prior to the trial. The court will therefore exclude this debt from its determination of the motion to dismiss.

2. The debtor testified at the trial that her alimony obligation was originally in the amount of $10,200 ($300 per month for 36 months) and that she has made three payments, leaving a balance owing of $9,900.

The parties stipulated that the issues to be determined by the court at the trial are whether the debts are primarily consumer debts and whether the granting of relief would be a substantial abuse.

## III.

### A.

 Under the plain language of the statute, the court must first determine whether the debtor's debts are primarily consumer debts. Section 101(8) of the Bankruptcy Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." The court "must look to the purpose of the debt in determining whether it falls within the statutory definition." *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 913 (9th Cir.1988). When more than half of the "dollar amount owed [by the debtor] is consumer debt, the statutory threshold [under Section 707(b) of the Bankruptcy Code] is passed." *Id.*

 The United States trustee asserts that more than one half of the dollar amount of the debt owed by the debtor is consumer debt. He first points to the debtor's petition, signed under penalty of perjury, in which the debtor indicated the nature of the debt in her case was "consumer/non-business." He also points to the debtor's failure to list any business affiliations in her statement of financial affairs that she also signed under penalty of perjury.

The debtor says that her failure to indicate on her petition that the debt involved in her case is primarily business debt was inadvertent. She makes the same claim about her failure to list her ownership and affiliation with Icelab, although to date she has taken no formal action to correct this oversight. The court credits the debtor's testimony and concludes that these inadvertent admissions are not dispositive.

The United States trustee also maintains that the debtor's unscheduled alimony debt, scheduled secured debt, and scheduled and unscheduled unsecured credit card debt is all consumer debt.

The debtor argues that the mortgage debt should be excluded from the court's determination of whether the debt is primarily consumer debt because the divorce court has ordered her former husband to pay it and it is therefore merely a contingent debt. In addition, the debtor argues that the unscheduled alimony debt should be excluded from the determination of whether the debt is primarily consumer because it is non-dischargeable debt in her bankruptcy case. Finally, the debtor asserts that the credit card debt is primarily business debt. Were the court to accept all of these assertions, the court would be required to conclude that the debt owed by the debtor is not primarily consumer debt and the United States trustee's motion would fail.

### B.

 The leading case that defines the parameters of debt to be determined under Section 707(b) of the Bankruptcy Code is *Kelly*, 841 F.2d at 912. In that case, the court decided whether debt secured by real property should be included in the totality of the debt when deciding whether the debt is primarily consumer debt for purposes of Section 707(b). The court noted that "the statutory language is clear and precisely addresses" how debt is analyzed under Section 707(b). The court reasoned that "debt" is defined in the Bankruptcy Code as "a liability on a claim." *Id.*; 11 U.S.C. § 101(12). "Claim" in turn is defined in Section 101(5) of the Bankruptcy Code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* The court concluded, therefore, that debt secured by real property is included in the determination of whether the debt is "primarily consumer debt." *Id.*

**49**

Unlike in *Kelly*, the debtor in this case seeks to exclude the debt on the former marital home from consideration under Section 707(b) on the basis that it is a contingent debt rather than because it is a secured debt.[3] The court's reasoning in *Kelly* is applicable to all debt as defined in Section 101(12), however, including contingent debt. *See also In re Vianese*, 192 B.R. 61, 68 (Bankr.N.D.N.Y.1996) [including contingent debt in its calculations of consumer and business debt]. Even if the debt is contingent, it still must be considered. The court will therefore include the debtor's debt on the former marital residence in its determination of the motion to dismiss.

■ The debtor also seeks to exclude the alimony indebtedness from the debt to be considered by the court. Here, the debtor relies on *In re Gentri*, 185 B.R. 368, 372 (Bankr.M.D.Fla.1995), which she argues stands for the proposition that marital settlement debts that will not be discharged in the bankruptcy case are excluded from the court's determination of whether debt is "primarily consumer debt" for purposes of Section 707(b). Contrary to the debtor's argument, however, the court in *Gentri* included all of the debt

owed by the debtor in its determination of whether the debt was consumer or business debt.[4] As the court in *Kelly* reasoned, if the debt falls within the statutory definitions, it is to be considered for purposes of Section 707(b).[5] 841 F.2d at 912. Accordingly, the court will consider the unscheduled alimony debt in its determination of whether the debt is primarily consumer debt.

### C.

Having concluded that the court must consider all of the debt owed by the debtor in its determination of Section 707(b), the next issue for decision is whether the debt under consideration is primarily consumer debt. In this case, the debt to be considered is scheduled secured debt, unscheduled alimony debt, and scheduled and unscheduled credit card debt. Accordingly, the court will examine each type of debt separately.

First, the debtor scheduled secured debt in the amount of $2,545 owed to Rooms to Go for the purchase of furniture. She concedes this debt is a consumer debt.

■ The debtor also scheduled $60,645 for the purchase of real property. This

3. The debtor argues that this debt is merely contingent because the final judgment of dissolution of marriage requires that the former husband pay it. The final judgment of dissolution of marriage operates to determine the debts as between the debtor and her former husband only. The debtor remains liable to the bank on the purchase money mortgage notwithstanding the final judgment of dissolution of marriage.

4. Ultimately, the *Gentri* court concluded that the United States trustee had established that the debt in that case was primarily consumer debt. The court then turned to the separate issue of substantial abuse. On that issue, the court first examined the character of the debt that would be discharged, excluding secured and non-dischargeable debts. The court drew a favorable inference with respect to substantial abuse from the fact that the unsecured debts that would be discharged in that case were business, rather than consumer, debts. To the extent that *Gentri* can be interpreted to hold that the character of the debt by itself is

a mitigating factor in determining substantial abuse under Section 707(b), this court would not follow such authority.

In determining whether the debtor has the ability to pay his or her debts as a factor of substantial abuse, other courts have correctly taken into consideration whether a debt will be non-dischargeable and *thus a continuing expense* of the debtor. *See, e.g., Vianese*, 192 B.R. at 69 [including non-dischargeable student loans in determination of debtor's expenses]. These cases, however, do not support the proposition that the dischargeability of a debt is determinative of what debts are to be considered for purposes of deciding whether consumer or non-consumer debts predominate under Section 707(b).

5. It is clear that the dischargeability of a debt is not relevant to the question of whether the debt is "primarily consumer debt". Whether debt is consumer in nature requires a determination of its character or purpose rather than of its ultimate disposition in the context of a bankruptcy case. *Kelly*, 841 F.2d at 912.

debt represents the mortgage indebtedness on the former marital residence. Most courts have adopted the position, based upon a plain reading of the statute, that debts secured by real property are consumer debts. *See, e.g., Kelly,* 841 F.2d at 912 ["The statutory scheme so clearly contemplates that consumer debt include[s] debt secured by real property that there is no room left for any other conclusion."]; *In re Dickerson,* 193 B.R. 67, 70 (Bankr.M.D.Fla.1996) [first mortgage on debtor's residence is consumer debt]; *Vianese,* 192 B.R. at 68 [mortgage debt on debtor's personal residence considered to be a consumer debt]; *Gentri,* 185 B.R. at 372 ["Debts incurred for the purpose of acquiring, improving, and repairing the residence of a debtor and his family are debts incurred for personal, family, and household purposes."]. *But see In re Booth,* 858 F.2d 1051, 1054 n. 7 (5th Cir. 1988) [collecting cases in which courts have held that consumer debt does not include debt secured by real property]. *See also In re Ikeda,* 37 B.R. 193, 194–95 (Bankr.D.Hawai'i 1984) [consumer debt does not include mortgage lien secured by real property for purposes of co-debtor stay]. The majority position on this point is the better reasoned position. The court concludes, therefore, that the purchase money mortgage on the debtor's former residence is a consumer debt.

■ Second, the final judgment of dissolution of marriage requires the debtor to pay rehabilitative alimony to the former husband for a period of three years from the date of the final judgment of dissolution of marriage. Because the alimony debt is for the support and benefit of the debtor's former husband, it is a consumer debt. *In re Stewart,* 175 F.3d 796, 807 (10th Cir.1999)["[T]he weight of the case law on this issue conclusively shows [alimony] is a 'consumer debt' if it is based on a non-profit motive."].

Third, the debtor scheduled $79,102.80 in unsecured debt, consisting of monies owed on nine credit card accounts. The debtor also owes additional credit card debt that she did not schedule. The trustee asserts that the credit card debt is consumer debt. The debtor, on the other hand, argues that a substantial portion of her credit card debt is business debt relating to the start up and operating costs of Icelab. The resolution of this dispute is complicated by the fact that the accounts at issue are revolving accounts with numerous transactions, payments, and the accumulation of substantial interest and other fees that took place over a significant period of time. In addition, many of the balances on the accounts have been rolled over to new accounts due to favorable interest rates, making it hard to track some of the earliest transactions.

The United States trustee spent a considerable portion of the trial examining the debtor on specific transactions associated with accounts that the debtor asserted were partly or wholly business accounts. Although the court does not credit all of the debtor's testimony, it is clear from the debtor's credible testimony that the debtor incurred a substantial amount of business debt on her personal credit cards in starting up and operating Icelab.

The United States trustee established through credible evidence, however, that the debtor or her former husband made some consumer purchases on accounts denominated as exclusively business accounts. The evidence also demonstrated a pattern of spending by the debtor and/or her former husband on personal luxury items or services from upscale establishments.

In addition, the United States trustee introduced credible evidence that Icelab repaid approximately $36,000 to the debtor for the credit card advances and charges that she incurred on its behalf by making payments to her or her former husband or by making substantial payments directly on the credit card accounts.

Although it is clear that some of the debt that the debtor asserted to be busi-

ness debt is in fact consumer debt, the trustee failed to establish by a preponderance of the evidence the exact amount by which the debt alleged to be business debt is consumer debt. For purposes of this decision, therefore, the court adopts the debtor's assertions and concludes that $24,201.79 of the debtor's credit card debt represents consumer debt and $56,102.13 of the debtor's credit card debt represents business debt.[6]

For the reasons stated above, the court concludes that $97,291.77 of the debt in this case is consumer debt[7] and $56,102.13 of the debt in this case is business debt.[8] Because the consumer debt exceeds the business debt by a substantial amount, the trustee has established that this case is one with primarily consumer debts within the meaning of Section 707(b) of the Bankruptcy Code.

## IV.

■ Having determined that the case is one with primarily consumer debt, the court will now turn to the issue of whether the debtor's filing for relief constitutes substantial abuse of the Bankruptcy Code. Although early cases considered the debtor's ability to pay the debts as the conclusive factor in determining substantial abuse, the standard has evolved into an examination of the "totality of the circumstances." In re Mastromarino, 197 B.R. 171, 174–77 (Bankr.D.Maine 1996) [collecting cases]. In Mastromarino, the court summed up the current state of the law this way:

> [T]he various formulations of the "totality of the circumstances" analysis . . . . [include] factors touching upon financial need (e.g., income and expenses, budget, job/income stability); alternatives to liquidation bankruptcy (e.g., Chapter 13 eligibility, state law remedies, prospects for negotiation); mitigating circumstances (e.g., recent job loss, illness, disability or other "calamity"); aggravating circumstances (e.g. lavish lifestyle, incurring credit and taking cash advances beyond ability to pay); and general "honesty" (e.g., accuracy of schedules, forthright disclosure).

Id. at 176–77. In other words, "the substantial abuse determination must be made on a case-by-case basis, in light of the totality of the circumstances." Green v. Staples (In re Green), 934 F.2d 568, 572 (4th Cir.1991).

■ In considering the totality of the circumstances, the court is required to accord a presumption in favor of granting relief to the debtor. "[T]he "presumption" represents a congressional admonition that bankruptcy relief is favored and that 'the court should give the benefit of any doubt to the debtor and should dismiss a case only when a substantial abuse is clearly

6. At the trial, the debtor conceded the following allocations on the credit card accounts as between consumer and business debt:

| Creditor | Account | Consumer Debt | Business Debt |
| --- | --- | --- | --- |
| Citibank Pref. | 8325 | $ 3,913.00 | $ 3,913.00 |
| Citibank DE | 1405 | 4,249.20 | 6,373.80 |
| Citibank DE | 2505 | 1,939.00 | 5,960.80 |
| Exxon MC | 6178 | | 4,126.44 |
| Associates * | 3930 | | 7,203.31 |
| Bank One BP | 5973 | 1,723.00 | 1,011.77 |
| GTE MC | 0476 | 5,692.42 | 220.42 |
| First USA | 3287 | | 7,650.68 |
| Discover | 4815 | 3,234.59 | 3,234.60 |
| AT & T | 4952 | | 6,726.95 |
| Fleet | 4874 | | 7,036.88 |
| Chase | 9157 | | 1,202.48 |
| Sears | 17378–8 | 3,671.00 | 239.00 |
| Chase MC ** | 9140 | | 1,202.00 |
| Total | | $24,201.79 | $56,102.13 |

* The debtor listed this account on her exhibit as AmSouth. The evidence, however, is that it is Associates.
** This is an unscheduled credit card account proven at trial. Statements produced at trial reflect activity on this account only up to September of 1998.

7. This amount includes $60,645.00 for the former marital residence mortgage debt, $2,544.98 for the Rooms to Go secured debt, $9,900.00 for unscheduled alimony, and $24,201.79 in unsecured credit card debt.

8. This amount represents $56,102.13 in unsecured credit card debt.

present.'" *Mastromarino*, 197 B.R. at 177. The *Mastromarino* court went on to say that:

[I]f the schedules themselves demonstrate the debtor's ability to make "very substantial payments on unsecured indebtedness," or if the United States trustee introduces other evidence of such ability (e.g. by demonstrating that the schedules do not accurately portray the debtor's ability to pay), the initial burden is met, the presumption "vanishes entirely ... and the question must be decided as any ordinary question of fact." At that point, with the ultimate burden on the moving party, the court will consider all pertinent circumstances.

*Id.*

██ The United States trustee asserts that the debtor's current circumstances allow her to make substantial payments on her indebtedness. The United States trustee points out that the debtor enjoys stable employment as a territory manager with a pharmaceutical company and, in addition to a generous salary, receives commissions, a company car, and an expense and entertainment account. The United States trustee also makes the following attacks to the debtor's income and expense statements:

A. a voluntary income deduction of $667 per month for a 401(k) plan contribution should not be considered in determining the debtor's ability to pay;

B. home maintenance costs of $400 per month are excessive for a rental apartment and should be reduced to $100 per month or eliminated;

C. recreation costs of $500 per month are excessive and should be reduced to no more than $100 per month;

D. payment to the Internal Revenue Service of $500 per month should be excluded because the tax debt represented by this expense has been paid in full; and

E. the $470 per month car lease payment should be excluded because the lease has expired.

██ At the trial, the debtor conceded Points A, D, and E. The debtor conceded Points B and C only in part, asserting that she now spends or expects to spend in the future $200 per month in home maintenance and $200 per month in recreation. The court agrees with the United States trustee that the home maintenance expense of $400 per month should be eliminated because the debtor is now living in a rented apartment. The court also agrees with the United States trustee that no more than $100 per month for recreation is reasonable for someone in the debtor's circumstances. Considering these adjustments and others required by the evidence, the court determines that the debtor has a net disposable monthly income of at least $927 with which she could pay her debts.[9] The court concludes, therefore, that the United States trustee has met his burden in showing the debtor has an ability to pay her debts.

The debtor asserts that her recent divorce is a mitigating factor in determining substantial abuse. The debtor argues that the final judgment of dissolution of marriage, in which she accepted liability for most of the joint debt in addition to agree-

---

9. The court calculates this amount as follows:

Income

$4,690 scheduled net monthly income
+ 667 401(k) contribution
− 225 rent for sub-lease of car no longer paid to debtor
− 600 rent no longer paid to debtor by roommate
$3,198 current net monthly income

Expenses

$4,366 scheduled monthly expenses
− 325 reduction in monthly rent due to debtor's move
− 400 home maintenance expense reduction
− 400 recreation costs reduction
− 500 payments to the Internal Revenue Service no longer paid
− 470 car lease payments no longer paid
$2,271 current monthly expenses

Subtracting $2,271 in expenses from net income of $3,198 leaves the debtor $927 in disposable income each month.

ing to pay alimony and attorney's fees to or for her former husband, precipitated the bankruptcy filing. As the court wrote in *Mastromarino*, however, "the divorce resulted in expensive obligations only because [the debtor] had, and retains, the ability to pay them." *Mastromarino*, 197 B.R. at 180. Indeed, the debtor agreed to pay these debts in her marital settlement agreement. The court concludes, therefore, that this factor does not mitigate the debtor's substantial abuse evidenced by her ability to pay her debts.

In addition, the evidence and testimony adduced at the trial clearly shows that the debtor enjoys a very comfortable standard of living with substantial discretionary income. Although perhaps it would be unfair to characterize her lifestyle as lavish, the credit card and checking account records received in evidence support the proposition that the debtor denies herself little. In these circumstances, the debtor clearly has viable alternatives to a Chapter 7 liquidation to solve her financial problems.

Accordingly, upon consideration of the totality of the circumstances, the court concludes that the trustee has established by a preponderance of the evidence that the debtor's filing of a petition under Chapter 7 of the Bankruptcy Code is a substantial abuse of that chapter within the meaning of Section 707(b).

### V.

Based upon the foregoing, the court will enter a separate judgment of dismissal. The judgment will provide that the order will cease to be effective if, during the 10–day automatic stay of enforcement period provided by F.R.Civ.P. 62(a), made effective by F.R.B.P. 7062, the debtor files a motion to convert the case to a case under Chapter 13 of the Bankruptcy Code under Section 706(a).