**In re Charlotte A. LUIKART, Debtor.**

**No. 6:02–BK–13958–ABB.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Sept. 16, 2003.

David L. Wildman, Melbourne, FL, for Debtor.

Elena L. Escamilla, Orlando, FL, for U.S. Trustee.

### *ORDER*

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came on the United States Trustee's ("UST") April 4, 2003 Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) (Doc. 6). Debtor, Charlotte A. Luikart ("Debtor"), Responded to UST's Motion to Dismiss (Doc. 9). A hearing was held on the Motion to Dismiss June 11, 2003. The following Findings of Fact and Conclusions of Law are made after reviewing the evidence and arguments of counsel.

### *Findings of Fact*

Debtor filed chapter 7 on December 23, 2002 (Doc. 1). A meeting of creditors was held February 3, 2003. Gene Chambers,

chapter 7 Trustee ("Trustee"), filed a Notice of Conclusion of the Meeting of Creditors and a Final Report (Doc. 4). Trustee reported no distribution would be made to unsecured creditors. Debtor scheduled eight unsecured non-priority creditors with claims totaling $71,565.25. Seven of the unsecured creditors are described as "credit account" or "credit card." One unsecured creditor is an "educational loan." Debtor's obligations are primarily consumer debts.

Debtor claimed as exempt, two properties she jointly owns with her non-debtor husband, her homestead pursuant to Fla. Stat. Ann. §§ 222.01, 222.02 and a rental home pursuant to 11 U.S.C. § 522(b)(2)(B).[1] Debtor listed herself in her schedules as responsible for the homestead mortgage, electricity, water and telephone payments. She also included in her schedules a payment on a student loan,[2] personal medical expenses[3] and cell phone payments.[4]

UST filed a Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) on April 4, 2003 (Doc. 6). The Motion alleged Debtor's case is a substantial abuse of Chapter 7 because Debtor has sufficient disposable income to make a significant distribution to her unsecured creditors during a thirty-six (36) month chapter 13 plan, she understated her income on Schedule I and three expense items on Schedule J, were either duplicative or inappropriate (Debtor admitted duplication).

UST also argued Debtor's monthly medical expense should be reduced, since documentation provided by Debtor supported only $173.00 per month. Debtor insisted the correct amount would be $474.00 per month for the next year due to additional medical costs. If Debtor's assertion of rising medical costs is accurate, her disposable income would rise in the second and third year of a chapter 13 plan, since planned medical expenses would decline.[5]

Debtor supplemented her original schedules with a "Schedule of Current and Family Income and Expenses" (Ex. 10), at the hearing, which delineates the responsible party for each expense incurred by the family. Debtor also included a calculation of her salary, her husband's salary (without overtime or bonuses), and their combined rental income.

Ex. 10 lists the Debtor as the responsible party for the homestead mortgage, electricity, water and telephone payments. Debtor eliminated the student loan payment listed on her original Schedule J. She raised her medical expenses[6] and lowered her home maintenance,[7] clothing[8] and electric payment obligations.[9] Debtor adds additional expenses for gifts[10] and Weight Watchers.[11] She eliminates a

1. The combined value of the two homes, plus other claimed exemptions total $265,520.91.

2. Student loan payment of $75.00 per month.

3. Personal medical expenses of $350.00 per month.

4. Cell phone payment of $25.00 per month.

5. Debtor's disposable income would increase by $301 per month after the first year of the chapter 13 plan.

6. Medical expenses increased from $350.00 to $474.00 per month.

7. Elimination of home maintenance expenses; from $50.00 to zero per month.

8. Clothing expenses decreasing from $250.00 to $200.00 per month.

9. Electricity expenses decreasing from $250.00 to $200.00 per month.

10. Increase of $100 for co-worker gifts.

11. Increase of $56.00 per month for Weight Watchers.

transportation expense.[12] According to Debtor's Ex. 10, she and her non-debtor husband have twelve dollars ($12) of disposable income per month.

The student loan contained in her schedules was a loan her daughter owed to the Debtor's father that she felt a moral obligation to repay. Debtor's cell phone bill included charges for additional phones and calling minutes for her adult daughters. The revised medical expenses contained in Ex. 10, are a one-time medical procedure, which would be paid in one-year and the gift expense was for co-worker gifts.

Debtor's monthly net income is $3,682.00.[13] Her non-debtor husband's monthly net income is $3,433.00.[14] Debtor contributes fifty-two percent (52%) of the household monthly income.[15] The joint family monthly household expenses are $4,207.00 (*See* Ex. 10). Since Debtor contributes fifty-two percent (52%) of the household income, she is responsible for fifty-two percent (52%) of the household expenses.[16] Debtor's monthly disposable income, after expenses, is $1,190.00.

The UST calculated the total distribution pursuant to a three year chapter 13 plan would be forty-three percent (43%) or $31,092 in payments of $71,565 of the scheduled unsecured debt. The distribution to scheduled unsecured creditors would be sixty-nine percent (69%) or $50,064 of $71,565 of scheduled unsecured debt without disputing Debtor's expenses contained in Ex. 10.[17]

Debtor's original schedules filed under oath, Ex. 10 and testimony all misrepresented the true nature of her financial condition. Her assumption of the full amount of household expenses to disguise her husband's earnings and contributions to family expenses appear to be intended to avoid the potential ramifications of 11 U.S.C. § 707(b). Debtor's schedules, Ex. 10, testimony demonstrate Debtor's substantial abuse of 11 U.S.C. § 701 et seq.

### Conclusions of Law

A chapter 7 case may be dismissed if the case is "filed by an individual debtor whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter." 11 U.S.C. § 707(b).

"Section 707(b) was the result of a legislative compromise. Congress rejected attempts by the consumer credit industry to permit creditors to move for dismissal of cases on the basis that the debtor had an ability to pay debts." Colliers on Bankr. ¶ 707LH[2]; *see also* H.R. 4786, 97th

---

12. Elimination of a $200.00 per month transportation expense.

13. Debtor's salary plus one-half of the $560 dollars a month Debtor and her husband receives from the rental property.

14. Debtor's husband's net salary includes commissions, overtime, IRA contributions and his one-half of the rental income ($260.00). His net salary was determined by taking his March 29, 2003 to April 4, 2003 pay stub and averaging his year to date income over fourteen 2003 pay periods. His averaged 2003 salary is slightly higher than his 2002 salary of $45,000.

15. Debtor's salary plus Debtor's half of the rental income ($260).

16. Debtor also is responsible for $473.00 of personal expenses (auto insurance, supplemental life insurance and personal care expenses).

17. The percentage distribution assumes Debtor's disposable income for the first year of the plan ($14,280) and an additional $301.00 per month, following a one-year increase for a one-time medical expense, for the remaining two years of the plan. The additional $301.00 reflects the documentation of medical expenses provided by Debtor to the UST of $173.00 a month for medical expenses.

Cong. 1st Sess. § 3 (1981). The "substantial abuse" standard enacted rejects the ability to pay language desired by the consumer credit industry. *See* S. 445, 98th Cong. 1st Sess. § 203 (1983); *see also* S. 2000 97th Cong.2d Sess. § 18(c) (1982); S.Rep. No. 65, 98th Cong. 1st Sess. 54 (1983).

■ The enactment of 11 U.S.C. 707(b) and its "substantial abuse" test gives bankruptcy courts wide discretion to dismiss "a consumer case when the filing is substantially abusive." Colliers on Bankr. ¶ 707.04[1][a]; *see also In re Stewart,* 175 F.3d 796 (10th Cir.1999)(section 707(b) determined valid pursuant to the Due Process and Equal Protection Clauses).

■ The Bankruptcy Code does not define "substantial abuse," but recent cases in this District have found "substantial abuse" by a "totality of the circumstances" standard. *See In re Seager,* 211 B.R. 81 (Bankr.M.D.Fla.1997); *see also In re Degross,* 272 B.R. 309; *In re May,* 261 B.R. 770; *In re Hall,* 258 B.R. 45; *In re Weber,* 208 B.R. 575; *In re Gentri,* 185 B.R. 368; *In re Tindall,* 184 B.R. 842.

The "totality of circumstances" standard used to determine "substantial abuse" has been interpreted differently by the Circuits. The Court of Appeals for the Ninth Circuit held in *In re Kelly,* 841 F.2d 908, 915 (9th Cir.1988) that ability of the debtor to pay his debts, "standing alone" was enough to support a dismissal for substantial abuse. Other courts have held that while ability to pay is a predominate element it must be considered in conjunction with other bad faith actions of the debtor. *See In re Lamanna,* 153 F.3d 1 (1st Cir. 1998); *see also In re Stewart,* 175 F.3d 796 (10th Cir.1999); *see also In re Kornfield,* 164 F.3d 778 (2d Cir.1999).

"Some courts have found substantial abuse when substantial payments could be made, even if the payments are less than 100 percent." Colliers on Bankr. ¶ 707.04[4]; *see Fonder v. United States,* 974 F.2d 996 (8th Cir.1992)(89% payment in three year chapter 13 plan); *see also In re Krohn,* 886 F.2d 123 (6th Cir.1989)(ability to pay portion of debt from ample income); *see also In re Walton,* 866 F.2d 981 (8th Cir.1989)(ability to pay two-thirds in three year chapter 13 plan).

■ The "totality of circumstances" standard blends the debtor's ability to pay with a review of the debtor's actions. The actions and economies of the debtor, when viewed together, are considered in their totality in determining whether "substantial abuse" has been established.

■ Debtor has the ability, in a three-year chapter 13 plan, to potentially repay her scheduled unsecured creditors sixty-nine percent (69%) of their claims. Debtor has disguised her household income, included her daughters' expenses in her schedules and shifted payment responsibilities between her and her non-debtor husband to avoid giving an accurate disclosure of her disposable income. Debtor has failed in her duty to truthfully disclose her obligations and income. *See* 11 U.S.C. § 521(1); *see also In re Jones,* 134 B.R. 274 (N.D.Ill.1991)(debtor has duty to answer questions in schedules accurately, carefully and completely).

Debtor's ability to potentially repay sixty-nine percent (69%) of her scheduled unsecured creditors claims over a three-year chapter 13 plan, coupled with her deceptive actions in filing inaccurate schedules, Ex. 10 and her testimony, when measured by the "totality of circumstances" establishes "substantial abuse" pursuant to 11 U.S.C. § 707(b).

Therefore it is

**ORDERED, ADJUDGED AND DECREED** that the United States Trustee's

Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) is hereby **GRANTED**; it is further

**ORDERED, ADJUDGED AND DECREED** that this case will be Dismissed pursuant to 11 U.S.C. § 707(b) in fourteen (14) days of the date of this Order, unless Debtor converts to a case under Chapter Eleven or Thirteen pursuant to 11 U.S.C. § 706.